**DUNFEY HOTELS CORPORATION, Plaintiff,**

v.

**MERIDIEN HOTELS INVESTMENTS GROUP, INC., d/b/a Hotel Parker Meridien, Parlieb, Inc., Jack Parker individually and Meridien Hotels, Inc., Defendants.**

**No. 80 Civ. 4751 (JMC).**

United States District Court, S. D. New York.

Dec. 5, 1980.

Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City (David H. T. Kane, Siegrun Kane, Virginia Richard, New York City, of counsel), for plaintiff.

Stoll & Stoll, New York City (Robert S. Stoll, Harold R. Liebman and Doris S. Hoffman, New York City, of counsel), for defendants.

## OPINION

CANNELLA, Senior District Judge:

After consolidating the hearing of plaintiff's application for a preliminary injunction with a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2), on plaintiff's amended complaint, the Court finds for defendants, and the amended complaint is dismissed.

On defendants' counterclaims, the Court finds that defendants are entitled to a Judgment declaring that their use of the service mark, "Hotel Parker Meridien New York," and its abbreviation "Parker Meridien," in connection with hotel services does not infringe upon plaintiff's rights in its registered service mark, "Parker House." In addition, defendants are entitled to a Judgment declaring that their use of the names "Parker" and "Parker House" in connection with apartment services does not infringe upon plaintiff's rights in its mark. In all other respects, the defendants have failed to prove their counterclaims, and they are dismissed.

## FACTS

The present action has been precipitated by the impending entry of the latest competitor in Manhattan's flourishing luxury hotel market—the Hotel Parker Meridien New York.[1] This new forty-story hotel, sometimes called the "Parker Meridien," is scheduled to open on West 56th Street in January 1981. Plaintiff, Dunfey Hotels Corp. ["Dunfey"], a Delaware corporation with its principle place of business in New Hampshire,[2] owns the well-known Parker

---

1. Among the other new entrants in the luxury hotel market in New York City are the Helmsley Palace Hotel, the Grand Hyatt Hotel and the Harley Hotel.

2. Dunfey is presently a subsidiary of Aer Lingus, Irish International Airways.

House Hotel in Boston, Massachusetts, and the registered service mark "Parker House" as applied to hotel services. In this action, Dunfey seeks to enjoin permanently the owners and operators of the Hotel Parker Meridien New York from using the word "Parker" in any service mark or in any other manner in connection with hotel services since such use will allegedly cause the public to believe that defendants' hotel is in some way related to Dunfey's hotel. Jurisdiction is based on the Lanham Act, 15 U.S.C. § 1051, et seq., and the Judicial Code, 28 U.S.C. § 1338.[3]

*Plaintiff's Mark*

Dunfey owns a hotel chain of approximately twenty-two hotels and motels in the United States and Europe, most of which are moderately-priced.[4] Three hotels, however, are advertised as luxury "Dunfey Classic Hotels." Transcript of Proceedings, *Dunfey Corp. v. Meridien Hotels, Inc.*, 80 Civ. 4751 (JMC) at 165–66 [hereinafter cited as "Tr."]. These include the Parker House, the flagship hotel of the Dunfey chain, the Berkshire Place in New York City and the

Ambassador East in Chicago. Dunfey acquired the Parker House, one of America's oldest continuously-operated hotels,[5] in December 1968 when the hotel was on the verge of bankruptcy. At that time, through a series of assignments, Dunfey also acquired the rights to United States Service Mark Registration No. 819,282 for the mark "Parker House" as applied to hotel services. This mark was registered on November 22, 1966. *See* Tr. at 140–42; PX 33.

Dunfey spent nearly $8,000,000 to restore the Parker House so that the hotel has now regained its reputation [6] as one of the country's leading luxury hotels.[7] Dunfey presently spends in excess of $500,000 annually to promote and advertise the Parker House,[8] *see* Tr. at 185–86, and twenty-five percent of this promotional activity is directed to the New York market. Tr. at 147. In most of these advertisements, the Parker House service mark is followed closely by the subtitle "A Dunfey Classic Hotel." *See, e. g.*, PX 37. Similarly, one marquee out-

3. Diversity jurisdiction is lacking because plaintiff and the Meridien Hotels Investment Group, Inc., the original defendant in this action, are both Delaware corporations.

4. Dunfey is the largest holder of Sheraton franchises in the United States. Among its other holdings are the recently acquired New York Statler, formerly the Statler Hilton, and a Howard Johnson's Motor Lodge. None of the other Dunfey hotels is named the Parker House nor contains the word "Parker" in its service mark. *See* Plaintiff's Exhibit 24, Affidavit of Roy F. Dunfey ¶ 17 [hereinafter Plaintiff's Exhibits will be referred to as "PX__" and Defendants' Exhibits will be referred to as "DX__"]; PX 36, section V.

5. The Parker House Hotel was founded in 1855 by Harvey D. Parker. At that time, the Hotel also housed Parker's Restaurant, where such favorite American foods as Parker House rolls, Boston cream pie and Boston scrod were originated. During the nineteenth century, the Parker House was the meeting place for a group of distinguished American literary figures and philosophers, known as the Saturday Club, whose members included Ralph Waldo Emerson, Oliver Wendell Holmes and Henry Wadsworth Longfellow. In the spirit of this tradition, the Parker House today hosts the New England Circle, founded in 1974, which pro-

vides a forum for a series of guest speakers on topics of contemporary interest.

6. The national reputation of the Parker House is illustrated by several newspaper and magazine articles submitted by plaintiff. *See* PX 36, section II.

7. The Parker House contains 541 rooms and maintains an average daily occupancy rate of over 80%. In 1979, the hotel's guest room sales exceeded $7,500,000, and food and beverage sales exceeded $4,500,000. PX 35, ¶¶ 6–7. In 1976, the Parker House opened a restaurant within the hotel named Parker's. Tr. at 176. Although not as well-known as the Parker House itself, Parker's Restaurant has received some publicity. *See* PX 35, section III.

The Parker House caters to a sophisticated and well-educated clientele. Tr. at 148. Furthermore, the Parker House operates an "E.S. P." Program ("Executive Service Plan") which offers corporate executives of participating corporations, who are often frequent travelers, certain fringe benefits during their stay at the hotel. Tr. at 161–63; PX 36 at 66.

8. Advertisements for the Parker House appear in Time Magazine, New York Magazine, The Wall Street Journal, Newsweek, Business Week, The New York Times Magazine and various in-flight airline magazines. *See* PX 35, ¶ 8.

side of the Parker House contains the legend "Parker House—A Dunfey Classic Hotel." *See* DX U.

*Defendants' Mark*

The defendants in this action are Jack Parker, Parlieb, Inc. ["Parlieb"], a New York corporation owned by Jack Parker, and Meridien Hotels, Inc. ["Meridien"], a subsidiary of Air France.[9] Parlieb is the owner and operator of the Hotel Parker Meridien New York.

Jack Parker has been an active participant in the construction and apartment industry for the past thirty years. In 1950, he built an apartment complex in Queens named "The Parker House," and has since constructed and operated several other apartment complexes in New York, New Jersey and Florida. Many of Parker's apartment complexes have been named after him in a similar manner.[10] The Parker Meridien, now under construction by the Jack Parker Construction Corp.,[11] *see* Tr. at 245, 257, is Parker's first solo venture in the luxury hotel market.[12] He has invested $60 million in the hotel and, when completed, it will contain approximately 597 hotel rooms, 100 apartments, and various recreation facilities. Tr. at 209.[13]

9. Plaintiff originally commenced this action against Meridien Hotels Investment Group, Inc., a Delaware corporation, in the mistaken belief that it had an interest in or would operate the Hotel Parker Meridien in New York. During the course of the action, the Court granted a motion by defendants Jack Parker and Parlieb, Inc. to intervene in this action on consent. Thereafter, the Court granted plaintiff leave to serve an amended complaint which added Meridien Hotels, Inc., a New York corporation, as a defendant. The parties then agreed that the proposed answer and counterclaims of the intervenors would serve as the answer and counterclaims to plaintiff's amended complaint for all the defendants except Meridien Hotels Investment Group, Inc. *See* Tr. at 293; Motion to Intervene, Exhibit 1 (filed Sept. 16, 1980). Subsequently, the parties agreed that Meridien Hotels Investment Group, Inc. is not involved in the operation of the Parker Meridien, and therefore the Court grants its motion for summary judgment on consent. *See* Tr. at 294.

10. The apartment complexes constructed by Parker which bear his name, and some of which provide certain hotel services, are set forth below:

| | OPENING DATE | LOCATION | HOTEL SERVICES |
|---|---|---|---|
| PARKER HOUSE | 1950 | Queens, N.Y. | No |
| PARKER TOWERS | 1958 | Queens, N.Y. | Yes |
| PARKER DEAUVILLE | 1962 | Long Beach, N.Y. | Yes** |
| PARKER CRESCENT | 1962 | Manhattan | Yes |
| PARKER 40th | 1962 | Manhattan | Yes |
| PARKER TOWNE HOUSE | 1963 | Manhattan | No |
| PARKER GRAMERCY | 1965 | Manhattan | Yes |
| PARKER 72nd | 1967 | Manhattan | No |
| PARKER DORADO | 1968 | Florida | Yes* |
| PARKER TOWER | 1969 | Florida | Yes* |
| PARKER PLAZA | 1971 | Florida | Yes* |
| PARKER 86th | 1971 | Manhattan | Yes |
| PARKER IMPERIAL | 1973 | North Bergen, N.J. | No* |
| PARKER HIGHLANDS | 1980 | Florida | Yes |

\* Now under condominium ownership.

\*\* Sold approximately 1977.

Parker testified that he had no knowledge of plaintiff's hotel at the time he named his Parker House apartments. None of the above marks are registered on the federal or state level.

The hotel services provided at a number of Parker's apartments include valet service, laundry services, maid service, dry cleaning, and garage parking. *See* DX AG, Affidavit of Jack Parker ¶ 7. These buildings, however, do not rent rooms to transient guests and do not advertise in any hotel directories. Some of these buildings have been advertised, however, in the real estate section of newspapers. DX AG, Affidavit of Fay Crane.

In 1973, after the Parker Imperial opened in New Jersey, Dunfey complained that Parker's use of that name infringed upon its mark. Parker ignored the complaint since he believed that "I have every right to use my name in connection with my buildings, for hotel services, apartment services, or any other like service as I have been doing for many years and any which are normal expansions of such services." *Id.*, Affidavit of Jack Parker, ¶ 8. Plaintiff made no further complaints about Parker's use of his name until its April 24, 1980 letter, notifying him that it considered his use of the Parker Meridien mark to be an infringement. *See* PX 45.

11. The Jack Parker Construction Corp. is also known as the West 56th–57th Street Construction Corp.

12. Parker was a one-third partner with Harry Helmsley and Charles Beneson in building the Harley Hotel in Manhattan which is nearing completion. Both Parker and Beneson sold their interests in the Harley Hotel to Helmsley. DX AG, Affidavit of Jack Parker, ¶ 15.

13. The original plans for the Parker Meridien called for 75% apartment suite rentals with the remaining 25% operated as transient hotel rooms. This planned mixed use of the building, however, was not approved by the New York City Planning Commission. *Id.* ¶ 11.

On January 15, 1980, Parlieb entered into a twenty-year management agreement with Meridien, which operates approximately thirty-five other hotels around the world, *see* PX 40, to manage the Parker Meridien, *see* PX 39.[14] This agreement provides that Meridien has the sole and exclusive right to manage the hotel as a "first-class hotel comparable to the Park Lane or Regency Hotels," *see* PX 39 at 9, and that the hotel will be known as the "Parker Meridien New York," [15] *id.* at 13. Neither Meridien nor any other subsidiary of Air France has an investment interest in the Parker Meridien.

Kevin Buckley, the partner in charge of account management and marketing at the David Deutsch Associates Agency [the "Deutsch Agency"], testified that his advertising agency has been retained to advertise the Parker Meridien. He stated that, as of September 22, 1980, only one Parker Meridien advertisement directed to the general public has been published. That advertisement ran in the September 1980 issue of *Town and Country Magazine* on page 220. PX 17. The design of the advertisement is reminiscent of the French flag and contains the approved logo for the hotel—"Hotel Parker Meridien New York" next to the stylized Meridien "M" trademark—arranged with the words "Hotel Parker" on the top line in ⅛-inch lettering, "Meridien" on the middle line in lettering that is twice as large, and "New York" on the bottom line again in ⅛-lettering. Buckley further testified that the word "Parker" can be used in advertisements only in the context of the approved logo, and that the same proportionate size of words will be maintained whenever the logo is used. Tr. at 45. The advertisement reads:

THE HOTEL IMPORTED FROM FRANCE. There's an elegant new hotel in New York. Just down the street from Carnegie Hall. A stone's throw from Van Cleef & Arpels. A hotel that offers you exquisitely furnished rooms and suites; resident executive apartments; a dazzling health club with racquetball and squash courts; a sparkling rooftop pool; and a French management dedicated to the proposition that all luxury hotels are not created equal. Introducing the Hotel Parker Meridien at 118 W. 57th Street, N.Y., N.Y. 10019 .... There are over thirty-five Meridien Hotels around the world, including the Hotel Meridien Houston, and the new Hotel Meridien opening soon in Boston....

PX 17. There is no doubt that the Parker Meridien's advertising campaign is aimed at the same high-income, highly educated audience that is the target of the Dunfey advertising campaign. *See* Tr. at 54–55. Indeed, the Deutsch agency currently plans to run the Parker Meridien advertisements in many of the same publications in which Dunfey advertisements appear. Tr. at 31.

The Parker Meridien has also published advertisements in two trade publications, *The Hotel and Travel Index, see* PX 16, and the *American Society of Travel Agents,* October Issue, *see* PX 22. These two advertisements, as well as the many proposed advertisements that were introduced into evidence at trial,[16] *see* PX 18–21; DX A–T, stress the hotel's French atmosphere and ambiance. Tr. at 63. All of these advertisements must be approved by both Jack Parker and Meridien, although the Deutsch Agency is compensated by Meridien. Tr. at 57.

**14.** PX 39 is subject to a protective order.

**15.** Pursuant to this agreement, Parlieb will manage the health club and parking facilities only. Tr. at 227. Pierre Chapgier, an employee of Meridien, testified that Meridien's basic functions under the management agreement are (1) organizing the marketing of the hotel through the use of the Air France and Meridien sales and reservation networks and (2) supplying certain key personnel, such as the general manager and sales manager, who have hotel management expertise. The management agreement also gives Parlieb a license to use the Meridien name and trademark to market the hotel for the term of the management agreement, *see* Tr. 233–35, and provides that Meridien will be paid certain fees for its services.

**16.** The next set of advertisements directed to the general public is scheduled to be released in December 1980 or January 1981. Tr. at 14.

In addition to the advertising campaign, Meridien is responsible for generating as much publicity as possible for the new hotel in the news media.[17] Both Meridien and the Parker companies are also soliciting rentals for the 100 residential hotel apartments. Jacquelyn Sonenberg, the National Sales Director for these apartments, testified that the Parker Meridien sent solicitation letters and brochures to twenty-five thousand corporations around the world regarding the rentals. *See* PX 44, DX AJ.

After plaintiff became aware of the impending opening of the Parker Meridien, its general counsel notified Jack Parker, by letter dated April 24, 1980, that he considered Parker's use of the name Parker Meridien New York to be an infringement, noting that "should you use 'Parker Meridien New York' for the name of your new hotel in New York, people will inevitably associate that hotel with the Parker House in Boston to our mutual disadvantage." PX 45. Plaintiff then commenced this action on August 18, 1980.

 Plaintiff claims that defendants' use of the service mark "Parker Meridien" infringes plaintiff's registered service mark ["Parker House"] in violation of 15 U.S.C. § 1114, and constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a). The defendants assert several affirmative defenses [18] and counterclaims for declaratory relief. In particular, the defendants seek a declaration that (1) their use of the mark Parker Meridien does not infringe upon plaintiff's mark; (2) that no person or company, including plaintiff, has exclusive rights to use the words "Parker," "Parker's" or "Parker House" as trade names or service marks in connection with restaurant services; (3) that defendants have the exclusive right to use the various Parker trade names in connection with apartment and hotel services in New York, New Jersey and Florida; [19] (4) that plaintiff's registered service mark is not incontestable; (5) that plaintiff's service mark should be cancelled and reissued as a concurrent use registration with defendants named as the exclusive user of the registered mark in New York, New Jersey and Florida, and plaintiff named as the exclusive user in Massachusetts.

---

**17.** With regard to expenditures for publicity and advertising, the Deutsch Agency has spent $30,000 to date on advertising, and is authorized to spend $850,000 in the hotel's first six months of operation. Tr. at 37–38. Overall, Meridien has to date spent approximately $100,000 in the United States and as much as $1 million abroad for advertising and publicity. Tr. at 232. The defendants estimate that Meridien will spend $2 million, and the Parker companies approximately $1 million, for publicity and advertising in the future. Tr. at 232, 264.

**18.** The defendants' affirmative defenses are merely restatements of their counterclaims with the exception of their fifth affirmative defense that plaintiff's claims are barred by laches, estoppel and acquiescence because it did not prevent defendants' use of the Parker House mark for the past thirty years in connection with apartment services. Although it is unnecessary to decide the validity of this affirmative defense in light of the Court's conclusion that defendants' use of the Parker Meridien mark is unlikely to cause public confusion with plaintiff's mark, the Court finds that the affirmative defense cannot succeed given the facts of the present case. The Second Circuit Court of Appeals has stated that a defendant advancing the defense of laches must show that plaintiff had knowledge of defendant's use of its mark, that plaintiff inexcusably delayed taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff to assert its rights at this time. *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980). In the present case, the evidence did not indicate when plaintiff first learned of defendants' use of the Parker House mark in connection with their Queens apartment building, but only indicated that the plaintiff complained of the use of the name Parker in connection with another building in 1973. Even assuming that plaintiff had knowledge of defendants' use of the Parker House mark in 1973 or prior to that date, plaintiff cannot be guilty of laches until "his right ripens into one entitled to protection . . . ." *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F.Supp. 866, 881 (E.D.N.Y.1978). Given the distinctive nature of the services rendered by defendants in connection with their apartment building under the Parker House mark, plaintiff was entitled to refrain from instituting costly litigation to defend their mark as applied to hotel services.

**19.** *See* note 10 *supra*.

## DISCUSSION

*Plaintiff's Claims*

■ The crucial issue in an action for trademark infringement or false designation of source is "whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *accord, The Berlitz Schools of Languages of America, Inc. v. Everest House*, 619 F.2d 211 at 215 (2d Cir. April 10, 1980); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204–05 (2d Cir. 1979). In assessing whether plaintiff has met its burden of proving a likelihood of confusion at the consumer level, the Court must evaluate the interests of the parties and the public that are protected by the trademark laws. The two interests that are relevant in the present case are the senior user's interest in protecting the good reputation associated with his mark from the possibility of being tarnished by the inferior merchandise or services of the junior user, and the public's interest in not being misled by confusingly similar marks. *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976). Of course, these interests overlap to a certain degree. If the consuming public is not confused as to the source of the junior user's product, and therefore does not associate that product with the senior user, then there is little likelihood that the senior user's good reputation will suffer because of the possibly inferior quality of the junior user's product.

The following factors, which are not intended to be an exhaustive list, are particularly relevant to determining whether plaintiff has shown a likelihood of confusion in the present case: (1) the strength of plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the parties' respective market areas, (4) instances of actual confusion, and (5) the defendants' good faith in adopting their mark. *See Mushroom Makers, Inc. v. R. G. Barry Corp.*, 441 F.Supp. 1220, 1225 (S.D.N.Y.1977), *aff'd*, 580 F.2d 44 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). While no single factor is determinative, all must be evaluated to determine whether plaintiff is entitled to relief. An evaluation of these factors in this case leads the Court to conclude that the defendants' mark is not likely to cause public confusion with the plaintiff's mark.

■ As to the *first* factor, plaintiff has established that the "Parker House" service mark is well-recognized in the northeast and is familiar to many throughout the country as referring to the hotel services available at its Boston hotel. Neither the Parker House mark nor the word "Parker" have been used by plaintiff as a name for another hotel in their chain. The Court finds, however, that plaintiff has not presented sufficient evidence to warrant a finding that the name "Parker," standing alone, has acquired a secondary meaning that refers to plaintiff's hotel services.[20] *See Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1042–43 (2d Cir. 1980). Moreover, the evidence of plaintiff's use of the unregistered mark "Parker's" in connection with restaurant services since 1976 is insufficient to establish plaintiff's exclusive right to use that mark on a national basis. Although the name "Parker's" may have acquired a secondary meaning in the Boston area because of the success of Parker's Restaurant, it is clear that plaintiff's rights in that mark in connection with restaurant services do not extend far beyond that area.

**20.** The only evidence presented by plaintiff indicating that the word "Parker," standing alone, had gained such a secondary meaning, was the expert testimony of William H. Kaven, a professor of marketing and economics at Cornell University's School of Hotel Administration. The Court is not persuaded, however, by the testimony of an expert in this area. The crucial issue before the Court is whether the general public will associate the word "Parker" with plaintiff's hotel services, and not whether persons, such as Mr. Kaven, who are familiar with and participate in the hotel industry will make that connection.

*Second*, after carefully examining all the evidence presented at trial, the Court concludes that the degree of similarity between the two marks is not great. In reaching this conclusion, the Court has analyzed the manner in which the parties have used or plan to use their respective marks. For example, the Court finds that the marks are dissimilar because of the emphasis the authorized logo for the Parker Meridien gives the Meridien "M" trademark and the word "Meridien," rather than the word "Parker." In addition, the evidence before the Court indicates that plaintiff, understandably proud of its achievement in restoring the Parker House, and eager to increase sales at other Dunfey hotels by emphasizing the Parker House's connection with the Dunfey chain, normally uses the Parker House mark in conjunction with the phrase "A Dunfey Classic Hotel." Moreover, advertisements for the Parker House often specifically refer to other Dunfey Classic Hotels. Similarly, the Parker Meridien advertisements, which emphasize the French management of the hotel, have referred, and are likely to continue to refer, to other Meridien hotels, one of which will open soon in Boston. It is therefore likely that the sophisticated consumers to which both hotels cater will note both the distinctly French ambiance of defendant's hotel and the lack of connection between the hotels in their respective advertisements.

Plaintiff, nonetheless, argues that defendants' use of the Parker Meridien mark is likely to cause consumer confusion for two reasons. *First*, plaintiff contends that the natural abbreviation for defendants' mark is "Parker," [21] which presumably consumers will associate with plaintiff's Boston hotel. Plaintiff, however, has failed to produce sufficient evidence to support either conclusion. *See Saratoga Vichy Springs Co., Inc. v. Lehman, supra*, 625 F.2d at 1042–43. *Second*, plaintiff argues that be-

cause defendants' hotel is named the Parker Meridien, it will be listed in the New York City section of the *Hotel & Motel Red Book*, a directory of hotels and motels throughout the world, under "P" for Parker just as plaintiff's hotel is listed in the Boston section under "P" for Parker. *See* PX 38. Plaintiff contends that persons wishing to stay in a hotel affiliated with the Parker House in New York City will see the Parker Meridien listing and assume that the two hotels are related. Again, however, plaintiff presented no evidence that an appreciable number of consumers would make such an assumption. In any event, the Court finds little likelihood that such a listing will lead to public confusion.

*Third*, because both hotels advertise to and will endeavor to attract the same sophisticated clientele from the same target areas—the northeast and various other urban centers around the country, it is evident that plaintiff has a significant interest in preventing any damage to its good reputation that would result if guests, believing that both hotels were run by plaintiff, were dissatisfied with the Parker Meridien and thereafter refused to stay at the Parker House. The Court finds that even though the parties are competing in the same market area, plaintiff is not likely to suffer such injury to its reputation given the dissimilarity of the marks at issue and the defendants' tendency to stress the "French management" and ambiance of their hotel.

*Fourth*, plaintiff produced little reliable evidence of actual confusion. In this regard, William Murphy, the Director of Sales at the Parker House, testified that a room service waiter asked if Dunfey was opening a new hotel in New York called Parker. Tr. at 168. Aside from this one incident, plaintiff produced no evidence of actual confusion at trial. Of course, proof

---

21. In support of this argument, plaintiff produced evidence that, on June 16, 1980, there was a sign located in the sales office of the Parker Meridien which read "The Parker." PX 11. Defendants explain that this sign was put up before Parlieb had entered into the management agreement with Meridien, and that the

sign has since been removed. Furthermore, the defendants state that the word "Parker" will not be used alone in any sign or advertisement. Therefore, this evidence does not support plaintiff's contention that it is likely that the defendants' hotel will be known simply as the "Parker."

of actual confusion is not required in an infringement action, and it is sufficient if other factors indicate a likelihood of confusion. *See W. E. Bassett Company v. Revlon, Inc.,* 435 F.2d 656, 662 (2d Cir. 1970). In the present case, however, the plaintiff's other evidence is also insufficient to sustain its burden of proving a likelihood of confusion.

■ *Fifth,* the Court finds that defendants adopted the Parker Meridien mark in good faith.[22] Jack Parker testified that he knew of the Parker House Hotel at the time he decided to use the Parker Meridien mark, but that he did not intend to trade on the goodwill of plaintiff's hotel. Parker contends that the defendants' mark is not similar to plaintiff's, and that during his thirty years as a builder he has acquired substantial goodwill in his own name, which he has a right to capitalize on now as the owner and builder of the Parker Meridien.

■ It is well-settled that a second comer's right to use his own name in establishing an enterprise in which his skill and knowledge can be made known to the public will be limited only when it is shown that the first comer's use of that name has acquired secondary meaning. *See Taylor Wine Co. v. Bully Hill Vineyards, Inc.,* 569 F.2d 731, 734–35 (2d Cir. 1978). In the present case, however, although plaintiff has demonstrated the secondary meaning of its Parker House mark, it has failed to demonstrate that the name "Parker," standing alone, has acquired secondary meaning referring to its hotel services, or that defendants' mark is so similar to its registered service mark that public confusion is likely to result. Given the circumstances of this case, in which the defendants seek to capitalize on Jack Parker's reputation as a builder and Meridien's reputation in hotel management, there is no indication that defendants chose their mark in an attempt to trade on the Parker House's goodwill, or that Jack Parker's right to use his own name in connection with that hotel should be circumscribed.

Having considered the various factors in light of the evidence adduced at trial, the Court concludes that plaintiff has not sustained its burden of proving a likelihood of confusion. Although both marks are competing in essentially the same market and a component of both marks is the name Parker, the other distinct qualities of the defendants' hotel and mark make public confusion unlikely. Accordingly, the Court finds that plaintiff has failed to sustain its burden of proving a likelihood of public confusion, and therefore is not entitled to injunctive relief.

*Defendants' Counterclaims*

■ On the basis of the foregoing discussion, the Court concludes that defendants have sustained their burden of proving that their mark is not likely to cause public confusion with plaintiff's "Parker House" mark as applied to hotel services. Therefore, defendants are entitled to a declaratory judgment that their use of the "Parker Meridien" mark does not infringe upon plaintiff's registered service mark. With respect to defendants' remaining counterclaims, however, the Court concludes that defendants have not sustained their burden of proof.

■ Defendants' failure to produce evidence in support of their counterclaims is particularly evident in their claim for a declaration that no one has the exclusive right to use the word "Parker" in connection with restaurant services. The only evidence produced by defendants in this area was a reference to a number of restaurants named Parker located throughout the United States. The mere fact, however, that others are using a mark does not destroy any right a prior user may have in that mark, in the absence of laches, abandonment or some other defense. *See Tisch Hotel v. Americana Inn, Inc.,* 350 F.2d 609 (7th Cir. 1965). Accordingly, the Court finds the evidence presented in this area

---

**22.** The Court recognizes that good faith is not in itself a defense in an infringement suit when

public confusion is likely to result.

insufficient to support the declaratory relief requested by defendants.

▮ Similarly, although the defendants produced evidence that Jack Parker has used his name in connection with certain apartment buildings built by him over the years, and that there has been no confusion as to the source of these apartments and plaintiff's hotel, they produced insufficient evidence to justify a declaration that defendants have the exclusive right to use the various unregistered "Parker" marks in connection with hotel and apartment services in New York, New Jersey and Florida. Defendants produced no evidence of secondary meaning in the various Parker marks as applied to apartment services, much less in connection with hotel services. *See* 1 J. McCarthy, *Trademarks and Unfair Competition*, § 13:2 (1973). On the basis of the evidence produced at trial, however, the defendants are entitled to a declaratory judgment that their use of the various Parker marks in connection with apartment services does not infringe upon plaintiff's registered service mark because the distinct character of the services provided in their apartment buildings makes public confusion unlikely. In all other respects, the evidence presented at trial is insufficient to entitle defendants to the sweeping declaratory relief requested.

Finally, defendants seek a declaration that plaintiff's service mark is not incontestable under 15 U.S.C. § 1065, the cancellation of plaintiff's service mark registration and the reissuance of a concurrent use registration. 15 U.S.C. § 1119. Defendants contend that plaintiff's right to use its registered service mark is not incontestable because, although plaintiff's predecessors used the Parker House mark in connection with hotel services since 1855, defendant Jack Parker used that mark without knowledge of plaintiff's mark in connection with apartment services in Queens, New York in 1950—prior to the publication of plaintiff's registered mark in 1966.

Section 1065 provides that the right to use a mark becomes incontestable after five years' continuous use after registration except to the

extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by the use of a mark or trade name continuing from a date prior to the date of the publication under this chapter of such registered mark . . . .

Similarly, 15 U.S.C. § 1115(b) provides that when the registrant's right to use his mark is incontestable, the registration shall be conclusive evidence of the registrant's exclusive right to use the mark except when one of seven enumerated defenses is established, including, *inter alia*,

That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved . . . .

15 U.S.C. § 1115(b)(5); *see* 1 J. McCarthy, *Trademarks and Unfair Competition,* § 19:48 (1973).

▮ At trial, defendants presented no evidence on how the Parker House name was used in connection with the Queens apartment or the extent that they may have acquired state law rights in that mark through that use. In any event, the Court finds that, even if defendants had demonstrated rights in the Parker House mark in connection with apartment services, the plaintiff's right to use the Parker House mark would be contestable only insofar as plaintiff could not prevent defendant from using that mark in connection with apartment services as they had prior to the publication of plaintiff's registration.

"Congress intended the Lanham Act to afford nation-wide protection to federally registered marks, and that once the certificate has issued, no person can acquire any additional rights superior to those obtained by the federal registrant."

*Holiday Inns, Inc. v. Holiday Inn*, 364 F.Supp. 775, 785 (D.S.C.1973), *aff'd mem.*, 498 F.2d 1397 (4th Cir. 1974) (quoting *Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904, 908 (7th Cir. 1968)). Defendants are apparently attempting to use the concept of incontestability offensively rather than defensively to obtain additional rights to use the Parker House mark in connection with hotel services based upon their limited use of that mark thirty years ago in connection with apartment services. The Court finds, and suspects that plaintiff would agree, that defendant's use of the name Parker House in connection with apartment services does not infringe upon plaintiff's registered service mark as applied to hotel services because it is unlikely that the public would be confused as to the source of plaintiff's hotel services and the defendants' apartment services. *See Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312, 319 (Cust. & Pat.App.1976). For the same reason, it can be also argued that plaintiff's registration is incontestable since section 1065 provides that the incontestability of the registrant's right to use its mark will be limited only to the extent it infringes upon another's state law rights in existence prior to the publication of the registered mark. In this case, plaintiff's registration did not infringe upon any rights defendants may have had in the Parker House mark in connection with apartment services. Furthermore, the fact that defendants later provided certain hotel services in other apartment buildings named after Jack Parker, without using the Parker House mark, does not affect this conclusion. Accordingly, the Court declines at this time to declare

that plaintiff's right to use its registered service mark is not incontestable on the basis of the factual record currently before it.

Similarly, the Court is not persuaded that it should order the cancellation of plaintiff's registered service mark and the issuance of a concurrent registration. Once the challenged registration is more than five years old, the grounds for cancellation are limited to those contained in 15 U.S.C. § 1064.[23] Defendants have not shown that any of those grounds are applicable here. Furthermore, with regard to defendants' claim for a concurrent registration, the mark defendants seek to register can be considered "primarily merely a surname," 15 U.S.C. § 1052(e), which requires the defendants to prove its distinctiveness through the acquisition of secondary meaning prior to registration. 1 J. McCarthy, *Trademarks and Unfair Competition*, § 13:11 (1973). On the basis of the present record, defendants are not entitled to a concurrent registration since they have failed to produce evidence of such secondary meaning.[24] Accordingly, the Court declines to order the cancellation of plaintiff's registered service mark and the issuance of a concurrent registration.

## CONCLUSION

In accordance with the foregoing, because plaintiff has failed to prove the claims contained in its amended complaint, the amended complaint is dismissed. The defendants are entitled to a Judgment declaring that their use of the service mark, "Hotel Parker Meridien New York," and its

**23.** Section 1064 in pertinent part provides:

A verified petition to cancel a registration of a mark, ... may ... be filed by any person who believes that he is or will be damaged by the registration of a mark on the principal register established by this chapter, or under the Act of March 3, 1881, or the Act of February 20, 1905—

. . . . .

at any time if the registered mark becomes the common descriptive name of an article or substance, or has been abandoned, or its registration was obtained fraudulently or contrary to the provisions of section 1054 of this title or of subsections (a), (b), or (c) of sec-

tion 1052 of this title for a registration hereunder, or contrary to similar prohibitory provisions of said prior Acts for a registration thereunder, or if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services in connection with which the mark is used

15 U.S.C. § 1064(c).

**24.** Similarly, the defendants produced little evidence that their "Parker House" mark is "used in commerce" as required by 15 U.S.C. § 1127.

abbreviation "Parker Meridien," in connection with hotel services does not infringe upon plaintiff's rights in its registered service mark, "Parker House." Further, defendants are entitled to a Judgment declaring that their use of the names "Parker" and "Parker House" in connection with apartment services does not infringe upon plaintiff's rights in its mark. In all other respects, defendants have failed to prove their counterclaims, and they are dismissed.

These are the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

Submit Judgment on Notice.

SO ORDERED.