Gerd HAUPT, Plaintiff-Appellee,

v.

ATWOOD OCEANICS, INC., et al., Defendants, Third Party Plaintiffs-Appellants,

v.

N. L. Shaffer, Third-Party-Defendant-Appellee.

No. 81–2252.

United States Court of Appeals, Fifth Circuit.

Aug. 6, 1982.
Rehearing and Rehearing En Banc Denied Sept. 16, 1982.

Kenneth D. Kuykendall, Houston, Tex., for defendants, third party plaintiffs-appellants.

Ray Hensarling, Houston, Tex., for Haupt.

John C. Allen, Houston, Tex., for N. L. Shaffer.

Before CLARK, Chief Judge, POLITZ and RANDALL, Circuit Judges.

CLARK, Chief Judge:

Atwood Oceanics, the defendant in this Jones Act suit, appeals from a jury verdict for the plaintiff, Gerd Haupt, and a directed verdict for the third-party defendant N. L. Shaffer. We affirm.

Haupt was employed by Atwood as a derrickman on Atwood's drilling vessel, the M/V Gettysburg. On April 11, 1975, he was working below the rig floor dismantling a pipe known as a mud flow line. He sat on the pipe while performing this task. When finished, he tried to stand up on the pipe to begin his return to the rig floor. However, because the pipe was covered with mud, he slipped. In order to prevent himself from falling, Haupt grabbed a nearby piece of chain with his right hand, and grabbed a cable with his left hand.

This cable was part of the tensioner system which applies variable pressure (up to one hundred thousand pounds) to the riser pipe to offset movement of the vessel by the sea. The cables pass over sheaves, or pulleys, and then attach to the riser pipe. They are kept taut by a hydraulic system which automatically responds to any slackening of the cables. As Haupt was attempting to regain his balance the movement of the cable pulled his left hand into the pulley, causing severe injury.

Haupt sued Atwood under the Jones Act, 46 U.S.C. § 688 and the general maritime law alleging that Atwood was negligent and that the vessel was unseaworthy. Haupt claimed the presence of drilling mud on the mud flow pipe and the absence of a

guard over the pulley rendered the work place unsafe.

Atwood filed a third party complaint seeking contribution or indemnity from N. L. Shaffer, the supplier of component parts for the tensioner system. This claim was, of course, contingent on a finding of liability against Atwood based on the lack of a guard over the pulley. Atwood's claim against Shaffer was based on negligence, strict liability in tort and breach of the *Ryan* warranty of workmanlike performance. *See Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

At the close of the evidence, the trial judge directed a verdict for Shaffer on the third party complaint. Haupt's claim against Atwood was submitted to the jury. The jury found in answer to special interrogatories that Atwood was negligent, and that its vessel was unseaworthy. It awarded Haupt $175,000.00, reduced 25% for his contributory negligence.

## I

On appeal, Atwood contends that the district court failed to abide by this circuit's well-known standard for the granting of directed verdicts. *See Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969). Atwood also claims error in the denial of its motion to reopen its defense of Haupt's claim. Finally, Atwood contends the trial court erred in failing to require the jury to consider the present value of future wage losses.

Our review of the record convinces us that the district court correctly applied *Boeing Co. v. Shipman's* standard to the facts here. We agree with the trial judge that there is a complete absence of probative facts which would justify letting a jury determine Shaffer's liability.

■ Atwood's brief implicitly acknowledges that the lack of a guard over a pulley does not pose a dangerous condition in and of itself. Rather, the unguarded pulley must be in proximity to a work place before potential danger arises. The uncontroverted proof showed that the location of the pulleys and cables supplied as parts of the tensioner system and thus their proximity to a workplace, was determined by the design of the vessel's substructure. Certain witnesses testified that in light of this, any guards would have to be custom designed, and that the earliest that could be done would be after the rig's substructure was designed. Other testimony suggested that the most feasible time to custom-design guards would be at the time the rig was constructed, and the tensioner system actually installed.

It is of no moment whichever of these two statements more accurately reflects industry custom. Shaffer's assigned role contemplated no responsibility for either design or construction. It was a supplier of the system's component parts as Atwood concedes. These facts point overwhelmingly to the conclusion that Shaffer was under no duty to provide a guard. Any danger posed by these component parts was a function not only of the design and installation of the tensioner system itself, but also a function of the location of the workplaces on the rig. The proof showed that all of these were unforeseeable elements over which Shaffer had neither responsibility nor control.

While these facts alone could well have supported a finding that Shaffer was under no duty to supply a guard, additional facts rendered the case even more one-sided. Testimony revealed that Shaffer has never designed guards for its pulleys, was never asked to do so by Atwood and that applicable industry safety standards do not call for guarding the pulleys of a tensioner system. An Atwood employee, Billy Floyd Schmittou, who had been involved in previous purchases of equipment from Shaffer, corroborated this testimony. He stated that Shaffer had never provided a guard in the purchases of which he was aware. Even as to the danger posed by this particular pulley, Schmittou testified that he did not feel that a guard was necessary. Jasper Moore, Atwood's representative at the construction site, testified that he never thought to inquire about the necessity for a guard, and thought the tensioner system had been properly installed. Irrespective of Shaffer's duty, Atwood's own employees manifested a belief that no danger was posed by the

tensioner system as it was designed and installed. This lack of concern speaks far louder than the hind sight of Atwood's expert witness.

Atwood argues strenuously that the presence of a Shaffer representative at the installation site mandates a different result. However, Atwood's brief makes it readily apparent that the Shaffer representative's role was confined solely to insuring that the tensioner system was properly installed and properly functioning. For example, the Shaffer representative was to tell Atwood if the pulleys were misaligned. There is no substantial evidence that the parties understood his duties to encompass anything having to do with responsibility for the rig's design or worker safety. Atwood's witnesses did testify they would have taken any necessary steps such as redesigning the rig, or having an engineering firm design guards if the Shaffer representative had recommended it. However, there was no duty on Shaffer's representative to make safety recommendations. A proffered willingness to follow suggestions that were not expected does not supply evidence of the quality and weight which *Boeing Co. v. Shipman* contemplates as necessary to make a jury issue.

Atwood's final argument concerning the third party claim says in effect that the *Ryan* warranty of workmanlike performance owed by Shaffer to Atwood automatically fixes liability on Shaffer for any injury involving the tensioner system. But Atwood, quoting *Italia Societa v. Oregon Stevedoring Co.*, 376 U.S. 315, 323–24, 84 S.Ct. 748, 753–754, 11 L.Ed.2d 732 (1964), acknowledges the legal standards which undercut application of the *Ryan* warranty here. First, the equipment supplied by the shipowner's contractor must be defective. 376 U.S. at 315, 320, 322, 84 S.Ct. at 748, 751, 752–753. As already discussed, the tensioner system itself was not defective. Second, "[t]he warranty . . . is intended to serve the objective that liability should fall upon the party best situated to adopt preventative measures and thereby reduce the likelihood of injury."

The Texas law of product liability is to the same effect as *Oregon Stevedoring*.

*See Rourke v. Garza*, 511 S.W.2d 331 (Tex. Civ.App.1974), *aff'd*, 530 S.W.2d 794 (Tex. 1975). Liability is fixed on the party who can most feasibly adopt safety measures. 511 S.W.2d at 337. *See also* 530 S.W.2d at 799–800. Unlike the scaffolding supplier in *Rourke* who could easily have attached safety cleats to the scaffold boards, Shaffer was in no position to prefabricate safety devices. Rourke could anticipate whether later assembly of its product would change it. 511 S.W.2d at 336. Shaffer could not. As the Texas courts put it, there was a defect at the "vital time." 511 S.W.2d at 336; 530 S.W.2d at 800. The evidence here is overwhelming that Atwood, or at least the shipyard, was best situated to guard against the danger by either locating the pulleys away from workplaces, or by guarding those pulleys once the rig was designed or constructed.

II

■ Atwood complains that the trial court did not permit it to reopen its case in response to rebuttal testimony by one of Haupt's witnesses. The witness, an Atwood driller, testified that he had been informed of a telex indicating that Haupt would be replaced on this rig. Assertedly, this testimony enhanced the award for future lost wages.

When this prejudicial, double hearsay testimony was offered at the end of trial, counsel for Atwood did not object. He then cross-examined the witness. When the court asked if any party wished to offer anything further he said no. It was not until the court convened the following morning that permission to reopen was sought. The court's refusal to allow this afterthought procedure was not an abuse of discretion.

III

■ Atwood claims that the trial court erred in not giving its requested instruction requiring the jury to consider the present value of future wage losses. We note initially, however, that Atwood registered an objection only to the trial court's failure to instruct the jury *not* to take inflation into

account. In the future damages context, the concepts of inflation and present value are related, but distinct. An instruction to consider inflation would require the jury to increase their projection of what a plaintiff would earn in the future by the expected rate of inflation over that future period. An instruction on the present value concept on the other hand requires that all future earnings and damages be discounted to their present value, i.e. to a principal sum which, with interest added, would yield the future amount. While inflation affects both future damages and the discount rate, the concepts operate quite separately in the future damage computation. Atwood's objection to the trial court's refusal to instruct the jury concerning inflation cannot be considered to serve the office of an objection to the failure of the trial court to submit Atwood's present value instruction.

■■■ Atwood also made a general request to the court to incorporate any of its requested instructions which were not contained in the court's charge. This is insufficient to constitute a proper objection under the Federal Rules of Civil Procedure. No party may assign as error the failure to give an instruction unless it objects before the jury retires and states distinctly the matter to which objection is made. *E.g., Patton v. Archer*, 590 F.2d 1319 (5th Cir. 1979). Because the failure to give a present value instruction did not lead to an incorrect verdict which in itself creates a substantial injustice, *see Rodrigue v. Divilyn Corp.*, 620 F.2d 537, 540 (5th Cir.), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981), there was no plain error here. *Travelers Ins. Co. v. Hurst*, 343 F.2d 160 (5th Cir. 1965).

The failure of the trial court to tell the jury not to consider inflation squares with existing circuit precedent. In *Johnson v. Penrod Drilling Co.*, 510 F.2d 234 (5th Cir.) (en banc), *cert. denied*, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975), we held that the trial court did not err in refusing to instruct the jury to consider inflation in computing future wage losses. In *Bryd v. Reederei*, 638 F.2d 1300, 1307–08, *reh'g granted*, 650 F.2d 1324 (5th Cir. 1981) (en banc), we upheld a charge that instructed the jury not to consider inflation. While *Byrd* permits, it certainly does not require the instruction requested by Atwood. Indeed, *Byrd* acknowledges that *Penrod* has been criticized, and that the Supreme Court has recently indicated that inflation may be a proper element of consideration in computing future damages. *See Byrd v. Reederei*, 638 F.2d at 1308, citing *Norfolk Western Railway v. Liepelt*, 444 U.S. 490, 494, 100 S.Ct. 755, 757–758, 62 L.Ed.2d 689 (1980). At the time of the rendering of our decision here, *Byrd* is being reconsidered *en banc*. Whether this procedure results in allowing inflation to be considered or maintains the *Penrod* rule would not affect today's case.

The judgment is

AFFIRMED.