Joan F. CARLTON, Individually and as representative of the estate of William R. Carlton, deceased, and as next friend of Robert Carlton, et al., Plaintiffs-Appellees,

v.

Dr. Herbert M. SHELTON, Individually and d/b/a Dr. Shelton's Health School, and Dr. Virginia V. Vetrano, Defendants-Appellants.

No. 82–1659.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1984.

Thomas Goggan, Austin, Tex., for defendants-appellants.

Franklin Houser, Dennis P. Bujnoch, San Antonio, Tex., for plaintiffs-appellees.

Before POLITZ, JOHNSON and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

Appellants Herbert M. Shelton and Vivian V. Vetrano are chiropractors operating the Shelton Health School in San Antonio, Texas. The Shelton Health School is a "medical facility" that, among other things, encourages the practice of extended fasting for the treatment of numerous illnesses. On September 11, 1978, forty-nine year old William R. Carlton checked into the Shelton

Health School in an attempt to obtain relief from a condition known as ulcerative colitis, a nagging disorder of the colon.[1] Upon admittance, Carlton weighed approximately 192 pounds and was, other than for ulcerative colitis, in good physical condition. Twenty-nine days later, Carlton died of severe dehydration, malnutrition, and aspiration pneumonitis.[2] At the time of death, Carlton weighed only 130 pounds.

Carlton's widow, Joan F. Carlton, instituted this action on behalf of herself and the Carltons' four surviving children—Lynn, Robert, Melissa, and David. The Carltons alleged that the appellants were both negligent and grossly negligent in the supervision of the decedent's fast and that William Carlton died as a result of the appellants' negligence and gross negligence. The case was tried to a jury, which found the appellants both negligent and grossly negligent and awarded the Carltons compensatory and punitive damages totalling $873,000. On appeal, appellants argue that there is insufficient evidence to sustain the jury's findings of negligence and gross negligence, that the district court submitted an improper definition of gross negligence, and that the district court erred by admitting evidence of prior, similar deaths at the Shelton Health School. There is a plethora of evidence supporting the jury's findings of negligence and gross negligence; the appellants failed to object to the district court's definition of gross negligence; and, the district court did not improperly admit the evidence of previous deaths at the Shelton Health School. Hence, we affirm the district court's judgment.

## I. Facts

In 1968, the decedent was diagnosed as having ulcerative colitis. While not particularly painful, the condition became quite a nuisance, often requiring the decedent to interrupt his active schedule as a finance and systems manager for Hewlett-Packard as many as eighteen times a day to relieve himself. Unfortunately, the decedent's condition did not respond to the repeated efforts of numerous physicians, and in April of 1978, Carlton's physicians recommended a complete colostomy, a process requiring surgical removal of the entire colon and construction of an external opening allowing the collection of the patient's excrement in a small plastic bag. Understandably hesitant to submit hastily to such a drastic operation, Carlton and his wife began to investigate alternative treatments.

Carlton was introduced to the concept of extended fasting by a friend at work and decided to pursue this alternative form of treatment prior to submitting to the surgical removal of his colon. Joan Carlton described the decedent's decision to pursue fasting at trial:

We had been introduced to the natural health hygiene way of thinking and possibility of undertaking a fast to allow the body to rest, cure itself, and we thought that, we thought that was a viable alternative to the operation because if it didn't work, we could always go ahead with the operation.

Record, vol. 1, at 35.

William Carlton read several books discussing the fasting treatment, and, after reading Dr. Shelton's book—*Fasting Can Save Your Life*—he contacted the Shelton Health School and consulted with Dr. Vetrano. Dr. Vetrano recommended an extended fast for the treatment of Carlton's condition, urged him to quit taking the medication prescribed for Carlton by his doctors, and enrolled Carlton in the Shelton Health School's fasting program. Carlton complied with Dr. Vetrano's advice, checked into the Shelton Health School weighing

---

1. While not uncommon, ulcerative colitis is a condition the cause of which remains unknown to modern medicine. *See* Record, vol. 1, at 193. A condition manifested by ulcers in the colon, ulcerative colitis appears more frequently in individuals involved in high stress occupations. *Id.*

2. Basically, aspiration pneumonitis occurs in individuals who have become too weak to gag. As a result, these individuals inhale their own saliva and vomit and are inflicted with bronchial disorders resulting from the inhaled substances.

192 pounds and, as we have seen, twenty-nine days later and sixty pounds lighter, William Carlton expired shortly after being admitted to Baptist Memorial Hospital in San Antonio, Texas.

## II. *Sufficiency of the Evidence*

■ Initially, appellants allege that there is insufficient evidence to support the jury's findings of negligence and gross negligence. In determining the sufficiency of the evidence, we apply well-settled standards of appellate review. If the state of the proof is such that reasonable and impartial minds could reach the conclusion expressed in the jury's verdict, we must not disturb the jury's findings on appeal. *See Fielder v. Bosshard*, 590 F.2d 105 (5th Cir.1979).

### A. *Negligence*

The district court's charge required the jury to determine whether Dr. Vetrano exercised that degree of care which a "reasonably careful person would [have] use[d] under the same or similar circumstances." The basic "reasonable person" standard was utilized since none of the attorneys at trial could suggest an appropriate standard of care other than the "reasonable person" standard. The degree of care required of medical doctors certainly was not appropriate since neither Dr. Vetrano nor Dr. Shelton held themselves out as medical doctors. Moreover, the degree of care required of chiropractors was not appropriate since the appellants do not appear to have been engaged in the practice of chiropractic medicine in their particular treatment of Carlton at the Shelton Health School. Confronted with this dilemma, counsel for the Carltons agreed to submit the issue of the appellants' negligence under the least stringent standard available—the reasonable person standard. *See* Record, vol. 1, at 121. Hence, there is no need for this Court to delve into the quagmire of determining the appropriate standard of care required of a "fasting practitioner." We need only determine whether reasonable and impartial minds could have concluded that Dr. Vetrano failed to exercise that degree of care which

a reasonably prudent person would have used under the same or similar circumstances. We have little difficulty concluding that the jury's verdict is supported adequately by the evidence presented at trial.

■ The evidence presented to the jury demonstrated that Dr. Vetrano literally allowed Carlton to starve to death. For twenty-nine days, the decedent was given nothing more than distilled water, usually only two cups of water a day. No vitamins or food supplements were administered and virtually no record of the decedent's progress was kept by Dr. Vetrano. The decedent's vital signs were not monitored and recorded on a daily basis and blood or urine samples were never tested. Indeed, the record reflects that Dr. Vetrano would not even see the decedent for as long as four days at a time. Carlton was unable to leave his bed for almost four days before Dr. Vetrano ultimately had him transported to Baptist Memorial Hospital and, upon arrival, the doctors noted that he could not sit up and became completely exhausted by simply moving his hands. Record, vol. 1, at 175, 197, 252, 253, 261. The deteriorated state of Carlton's condition when Dr. Vetrano finally sought competent medical assistance was described by the Bexar County Medical Examiner at trial:

> When he came in he was in a very serious condition, a critical condition. His blood tests revealed that the constituents of his blood were such that he was sort of, I guess you would say, balanced on a knife edge ... If he had died five minutes after admission I would not have been surprised in the least.

Record, vol. 2, at 419. Suffice it to say that the jury was presented with sufficient evidence to support the conclusion of negligence on the part of Dr. Vetrano.

### B. *Gross Negligence*

Appellants also contend that the jury was not presented with sufficient evidence to conclude that Dr. Vetrano's actions constituted gross negligence, defined to the jury as "a wanton or reckless disregard of oth-

ers."[3] We find sufficient evidence to support the jury's finding. As we shall find in the following section of this opinion, the jury properly was presented with evidence of three prior deaths at the Shelton Health School, which resulted from virtually identical causes. The fact that Dr. Vetrano previously had supervised three people who died from malnutrition and dehydration while engaged in a distilled water fast alone would support the jury's conclusion that Dr. Vetrano displayed a wanton and reckless disregard for the welfare of William Carlton. Certainly, the jury could have concluded that Dr. Vetrano was grossly negligent when she had seen three people waste away and die under substantially similar circumstances.

Dr. Vetrano's lackadaisical efforts to monitor Carlton's condition and her willingness to await the eleventh hour before contacting competent medical assistance also are indicative of her wanton and reckless disregard for Carlton's welfare. Although Dr. Vetrano alleged she visited the decedent on a regular basis, her notes clearly point to conduct to the contrary. Furthermore, while she testified that she attempted to have the decedent break his fast, there was no record in her notes of such advice. Even Dr. Vetrano's own witness, a "fasting practitioner," testified that the patient must be seen every day, that careful records must be kept, and that it is crucial to make a record of a patient's refusal to break a fast. Record, vol. 3, at 671–73. We "commit our trust to the jurors who saw and heard the witnesses" and refuse to disturb the jury's finding of gross negligence. *Fielder v. Bosshard,* 590 F.2d at 109.

III. *The Evidence of Prior Deaths*

▪ In appellants' final attack upon the district court's judgment, they contend that the district court erred by admitting evidence of similar, prior deaths at the Shelton

Health School. Record, vol. 2, at 399–400. We disagree.

During the testimony of Dr. Vincent Di Maio, Bexar County Medical Examiner, the autopsy reports of three individuals who had died as the result of extended fasting were admitted. Dr. Di Maio had examined the autopsy reports and had actually examined tissue slides that had been retained by the medical examiner. All three individuals, like William Carlton, had undertaken an extended fast at the Shelton Health School, had sustained extreme weight losses prior to the time of their demise, and had been under the care of Dr. Vetrano. *See* Record, vol. 2, at 8. Dr. Di Maio further testified concerning the similar nature of all four patients' deaths: "All of these people died as a result of dehydration, starvation and they manifested the evidence at autopsy of their disease, starvation, and dehydration." Record, vol. 2, at 407. Based upon the similarity of the conditions, the doctor testified that the individual who supervised the fast had grossly neglected the welfare of all four patients.

This Court has held that evidence of similar events may be relevant to the "defendant's notice, magnitude of the danger involved, [or] the defendant's ability to correct a known [condition]. . . ." *See Ramos v. Liberty Mutual Insurance Co.,* 615 F.2d 334, 338–39 (5th Cir.1980). We have also emphasized that the trial court generally has broad discretion in the admission of evidence. *Id.* at 340. We do not find error in the district court's admission of the prior deaths.

The evidence presented by Dr. Di Maio demonstrated that the three prior deaths occurred under shockingly similar circumstances and from virtually identical causes. This evidence undoubtedly was probative on the issue of Dr. Vetrano's gross negligence. The evidence proved that she was aware of

---

**3.** Appellants attack the trial court's definition of "gross negligence" and urge that it is inconsistent with the Texas Supreme Court's decision in *Burk Royalty v. Walls,* 616 S.W.2d 911 (Tex.1981). However, since the appellants failed to object to the trial court's definition of

gross negligence, we refuse to consider the appropriateness of the district court's definition. *See Haupt v. Atwood Oceanics, Inc.,* 681 F.2d 1058, 1062 (5th Cir.1982). The district court's definition certainly did not constitute plain error. *Id.*

the grave circumstances in which she had placed Carlton, had knowledge of the probability of death, and repeatedly ignored these patients' need for competent medical assistance. More relevant evidence of her wanton and reckless disregard for the welfare of her patients cannot be fathomed. While the evidence certainly was prejudicial to Dr. Vetrano, its admission did not constitute "unfair prejudice." *See* Fed.R.Evid. 403. The district court did not improperly admit the evidence of the three prior deaths.

## IV. *Conclusion*

William R. Carlton died as a result of severe dehydration and malnutrition while under the care of Herbert M. Shelton and Vivian V. Vetrano. An impartial jury concluded that Carlton's death was proximately caused by these individuals' gross negligence and awarded the decedent's wife and surviving children just compensation for their loss. We have seen that the evidence presented to the jury was relevant and admissible and that the jury's verdict is supported by a wealth of evidence. Accordingly, we affirm the district court's judgment in all respects.

AFFIRMED.