CONAN PROPERTIES, INC.,
Plaintiff-Appellant,

v.

CONANS PIZZA, INC.,
Defendant-Appellee.

No. 83–1687.

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1985.

Lieberman, Rudolph & Nowak, L. Michael Rudolph, David A. Kalow, New York City, for plaintiff-appellant.

McGinnis, Lochridge & Kilgore, David L. Orr, Arnold, White & Durkee, Michael T. McLemore, Austin, Tex., for defendant-appellee.

Before CLARK, Chief Judge, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Conan Properties, Inc. (CPI) owns the literary property rights in the fictional character "CONAN THE BARBARIAN" and licenses others to use the character in various commercial and entertainment works. CPI sued Conans Pizza, Inc. (Conans) for infringement of its federal trademark and for unfair competition and misappropriation of its property under Texas common law. By a special verdict, the jury found trademark infringement and unfair competition but refused to award damages, concluding that CPI had unreasonably delayed instituting this suit and had acquiesced in Conans' conduct. After the trial, CPI moved for injunctive relief, but the district court denied the motion. CPI appeals from that judgment, claiming that it was entitled to injunctive relief notwithstanding the jury's findings of laches and acquiescence. Conans asserts that the jury's implicit finding of likelihood of confusion was unsupported by the evidence. We affirm in part but we find the district court's denial of all injunctive relief was in error, and we reverse to that extent. In all other respects, the judgment of the district court is affirmed.

## I.

The CONAN character was created in 1929 by Robert Howard. But the character remained relatively dormant until the 1950's, when L. Sprague deCamp, a contemporary author, rediscovered and began

writing books featuring CONAN THE BARBARIAN. As the title might suggest, deCamp's *CONAN THE BARBARIAN* series told the tales of a gigantic, sword and battle-ax wielding barbarian adventurer who roamed the world in search of foes. Many of deCamp's works were illustrated by Frank Frazetta, an artist famous for his "sword and sorcery" style artwork. In 1970, the Howard estate licensed Marvel Comics to publish a series of comic books featuring CONAN THE BARBARIAN. To avoid litigation over who had rights in CONAN THE BARBARIAN, the Howard estate and deCamp united their interests in the CONAN character in 1976 and formed CPI. DeCamp is one of the two 50% shareholders of CPI. In that same year the United States Patent and Trademark Office (USPTO) granted CPI a federally registered trademark for the title "CONAN THE BARBARIAN" for comic books.

Also in this same year, Scott Leist. and Jerry Strader opened "Conans Pizza", a restaurant in Austin, Texas. The restaurant's menus, signs, promotional material, specialty items, and general decor featured a barbarian-like man who closely resembled CPI's CONAN character. For example, Conans Pizza's menus depicted a loincloth-clad, sword wielding, sandal wearing, barbarian-like muscleman, and they described one of the featured pizzas as the "Savage, Barbaric, All the Way Pizza." The owners decorated the restaurant with dozens of reproductions of Frank Frazetta's artwork, although only a few of the reproductions actually represented CONAN THE BARBARIAN.

While visiting relatives in Austin approximately one month after Conans Pizza opened, deCamp noticed the restaurant. He stopped by the restaurant, spoke with Jerry Strader, and identified himself as one of the creators of the CONAN character. He wished Strader success with his business and had a photograph taken of Strader and himself in front of one of the restaurant's signs. Later, deCamp sent Strader a copy of the photograph, on which he wrote: "With best wishes to Jerry Stader and Scott Leist from one of Conan's creators— L. Sprague deCamp."

At trial deCamp testified that he informed CPI's attorney about the existence of Conans Pizza in late 1976 and that the CPI board of directors from time to time at meetings discussed the trademark issue raised by the existence of Conans Pizza. In January 1981, CPI wrote to Conans Pizza and for the first time objected to Conans' use of CPI's mark. CPI demanded Conans cease using the mark. Later in 1981, Conans discontinued using much, but certainly not all, of the CONAN THE BARBARIAN indicia. It continued using "Conan" in its trade name and describing the featured pizza as "The Savage". It removed only those Frazetta prints that actually depicted CONAN, though the remaining prints closely resembled those few that featured CONAN. CPI filed this suit in March 1982, approximately 5½ years after deCamp first saw Conans Pizza.

From 1976 to 1980, Conans had opened four additional "Conans Pizza" restaurants in the Austin area. In April 1980, before CPI had sent its letter objecting to the use of the name "Conans Pizza", Conans filed with the USPTO an application for the service mark "CONANS PIZZA" for restaurant services. That application was granted by the USPTO in July 1982, after this suit had been filed. In the meantime, in January 1982, before this suit was filed but after Conans had received CPI's letter of objection, Conans opened a Conans Pizza restaurant in San Antonio, Texas. This restaurant was the sixth in the chain and the first outside the Austin area. Conans' combined sales from its six restaurants increased thirty-fold from 1976 to 1982, accounting for gross annual sales exceeding $3,000,000.

In its suit CPI sought injunctive relief, damages, and an accounting for profits. CPI alleged that the name Conans Pizza and Conans' activities infringed CPI's federally registered trademark under section 32(1) of the Lanham Trademark Act, 15 U.S.C. § 1114(1) (1982), created a false designation of origin under section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a) (1982), and constituted unfair competition and misappropriation of its merchandising property under Texas common law. Conans denied each of CPI's allegations and asserted the equitable defenses of laches and acquiescence.

Prior to trial Conans moved for partial summary judgment on CPI's common law claim for misappropriation of a merchandising property. The district court granted the motion and dismissed this claim. The remaining issues were tried and submitted to the jury. By a special verdict, the jury found that CPI had proved all of the elements of both a trademark infringement claim under the Lanham Act and an unfair competition claim under Texas common law. The jury found, however, that CPI had not proved all of the elements under the Lanham Act of its false designation of origin claim. In response to other special interrogatories, the jury determined that Conans' acquiescence and laches defenses were valid and precluded either the recovery of damages or an accounting for profits by CPI. After the trial CPI moved for injunctive relief, seeking to prevent Conans from using the mark CONANS PIZZA both locally and nationally. A nationwide injunction was particularly important to CPI because Conans was tentatively planning a national franchising scheme. The district court denied CPI's post-trial motion for injunctive relief.

## II.

A. *The Jury's Findings of Trademark Infringement and Unfair Competition*

The initial issue in this appeal is whether the jury's findings of trademark infringement under 15 U.S.C. § 1114(1) and unfair competition under Texas common law can stand against the claim that they were in error as a matter of law. Conans Pizza argues that the jury's implicit finding of likelihood of confusion for both the trademark infringement and the unfair competition claims was against the great weight of evidence and must be reversed.

The standard of an appellate court's review of a jury's verdict is narrow and exacting. The verdict must be upheld unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable persons could not arrive at a contrary verdict. *Western Co. of North America v. United States,* 699 F.2d 264, 276 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983). Even if the jury's verdict was based on sharply conflicting evidence and the court of appeals determines that reasonable persons might reach a contrary result, the jury verdict must be upheld. *Slavin v. Curry,* 690 F.2d 446, 449 (5th Cir.1982); *United States v. 6,162.78 Acres of Land,* 680 F.2d 396, 398 (5th Cir.1982). Our task, therefore, is limited to determining whether the jury had before it any competent and substantial evidence that fairly supports the verdict. *Stewart v. Thigpen,* 730 F.2d 1002, 1007 (5th Cir. 1984).

To prevail on its trademark infringement and unfair competition claims, CPI needed to demonstrate that Conans' use of the CONAN THE BARBARIAN mark and image was likely to create confusion in the mind of the ordinary consumer as to the source, affiliation, or sponsorship of Conans' service and product. *See, e.g., Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 258 (5th Cir.) (likelihood of confusion test applies to common law unfair competition claims as well as to claims under 15 U.S.C. §§ 1114(1), 1125(a)), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). A nonexhaustive list of factors to be considered in determining whether a likelihood of confusion exists includes: (1) the type of trademark alleged to have been infringed, (2) the similarity of design between the two marks, (3) similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising medium utilized, (6) the defendant's intent, and (7) evidence of actual confusion. *Armco, Inc. v. Armco Burglar Alarms Co.,* 693 F.2d

1155, 1159 (5th Cir.1983). The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported by even a majority of the seven factors. *Id.* at 1159.

■ We conclude that CPI presented sufficient evidence related to these seven factors to permit the jury to find that Conans' conduct created a likelihood of confusion as to the source, sponsorship, or affiliation of its service and product. The evidence adduced at trial revealed that Conans was aware of the CONAN THE BARBARIAN character prior to its adoption of the name Conans Pizza. Additionally, Conans' menus, advertising material, specialty items, and general decor featured a character unmistakably similar if not identical to CONAN THE BARBARIAN.

Conans answers that no reasonable person could have believed that its restaurants were related to CPI's CONAN THE BARBARIAN, since the products and services each provided were different. We must disagree. Although CPI never licensed any entity to use its mark in connection with restaurant services, ordinary consumers may well believe that Conans was in fact licensed by CPI. At the trial CPI presented evidence of numerous cartoon and other characters whose names, marks, or images were used in extensive licensing programs to promote everything from children's toys to fast-food restaurants. These characters included SNOOPY, POPEYE, DICK TRACY, PETER PAN, E.T., and ROY ROGERS. Many of today's consumers expect such endorsements and act favorably toward them. It is reasonable to assume, as the jury found, that ordinary consumers who patronized Conans Pizza and experienced the pervasive, inescapable aura of CONAN THE BARBARIAN in those restaurants were likely to believe that the restaurants were in some way licensed by or affiliated with CPI. We therefore leave undisturbed the jury's findings of trademark infringement and unfair competition.

### B. *Conans' Clean Hands*

■ The critical issue CPI raises is whether Conans Pizza was an intentional infringer and therefore lacked the clean hands necessary to assert the equitable defenses of laches and acquiescence. CPI shoulders the burden of proving that Conans' hands were unclean. *See, e.g., Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 373, 380 (5th Cir.1977), *aff'g*, 376 F.Supp. 1136, 1147 (S.D.Fla.1974); *United States v. Second National Bank of North Miami*, 502 F.2d 535, 548 (5th Cir.1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975); *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1337 (10th Cir.1982). CPI essentially asks us to conclude that Conans employed the CONAN THE BARBARIAN mark with the explicit bad faith intent of "passing off" its service and product as emanating from or endorsed by CPI. The record does not support such a conclusion.

■ Passing off may be found only where the defendant "subjectively and knowingly" intended to confuse buyers. 2 J. McCarthy, *Trademarks and Unfair Competition* § 25:1, at 173; § 31:2, at 381 (1st ed. 1973). This court has recognized that a defendant's mere awareness of a plaintiff's claim to the same mark neither amounts to passing off nor establishes the bad intent necessary to preclude the availability of the laches defense. *Armco*, 693 F.2d at 1159 n. 7. The plaintiff's burden, therefore, is heavy. To foreclose the laches and acquiescence defenses, the plaintiff must offer something more than mere objective evidence to demonstrate that the defendant employed the allegedly infringing mark with the wrongful intent of capitalizing on its goodwill.

■ In this case the jury did not find and the record would not support a finding of bad faith to deprive Conans of the equitable defenses. Although the parties submitted several special interrogatories to the jury, none asked the jury to determine whether Conans Pizza was an intentional, bad faith infringer when Conans began us-

ing the CONAN THE BARBARIAN mark and image.[1] Additionally, the jury's findings of trademark infringement and unfair competition did not constitute a finding that Conans acted with the wrongful intent to capitalize on CPI's goodwill, since wrongful intent is merely one of at least seven critical elements contributing to a finding of likelihood of confusion. *See Armco*, 693 F.2d at 1159; *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Association*, 651 F.2d 311, 314 (5th Cir.1981).

The record similarly fails to reveal the subjective and knowing bad faith necessary to foreclose the equitable defenses. Although there appears to be little doubt that Conans intended to use the CONAN THE BARBARIAN mark and image, sufficient doubt exists regarding whether that use was designed to capitalize on CPI's goodwill.[2] Leist and Strader testified at trial that they adopted the CONAN name because of the way it sounded in their marketing jingle—"Conans Cosmic Chicago Style Pizza", and that the barbarian man was used as a clever and unique way to market their service and product. They also stated that although they were familiar with the CONAN THE BARBARIAN character prior to opening their restaurant, they believed the character was neither popular nor well known in Austin. CPI offered no evidence to the contrary. Finally, they testified that they were unaware of any other person or entity employing the Conan mark or image to sell food products but that they would have changed their name if deCamp had voiced any objection when he first visited the restaurant. In view of this evidence and the absence of contrary evidence, we hold that CPI has not carried its burden of proving that Conans subjectively and knowingly intended to use its mark for the purpose of deriving benefit from CPI's goodwill. Conans therefore was able to assert the equitable defenses of laches and acquiescence.

## C.  *CPI's Motion for Injunctive Relief*

CPI next argues that the jury's findings of laches and acquiescence properly barred its request for damages but should not have precluded it from securing an injunction preventing Conans from continuing to infringe its mark both locally and nationally. With respect to Conans' infringement of CPI's mark locally, in Austin, we must conclude that the district court correctly denied CPI's request for injunctive relief after considering the jury's findings of laches and acquiescence. We emphasize, however, that Austin is the only area in which CPI waived its right to protect its mark, CONAN THE BARBARIAN. Conans received CPI's cease and desist let-

1. At the close of the evidence, CPI submitted from 60 to 80 proposed jury instructions, many of which the district court found inapplicable to this case. One of its proposed jury instructions stated essentially that if the jury found that Conans' conduct amounted to intentional infringement, the defenses of laches and acquiescence would be unavailable to Conans. During the jury conference, the court denied CPI's request to include this proposed jury instruction. CPI failed to object to the denial, specifically or otherwise, either at the jury conference or before the jury retired. CPI therefore waived its potential objection and is precluded from raising this issue on appeal. Fed.R.Civ.P. 51; *Carlton v. Shelton*, 722 F.2d 203, 206 n. 3 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1984); *Robin v. Wilson Bros. Drilling,* 719 F.2d 96, 97 (5th Cir.1983).

2. A showing that the defendant intended to use the allegedly infringing mark with knowledge of the predecessor's mark may give rise to a presumption that the defendant intended to cause public confusion as to the source or sponsorship of the product or service. *Louisiana World Exposition, Inc. v. Logue,* 746 F.2d 1033, 1042 (5th Cir.1984); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); Restatement of Torts § 729, comment f (1938). The same showing, however, does not give rise to a presumption that the defendant intended to appropriate the plaintiff's goodwill from its use of the allegedly infringing mark. *Armco,* 693 F.2d at 1159 n. 7; *see also Holiday Inns, Inc. v. Holiday Out In America,* 481 F.2d 445, 449 (5th Cir.1973). The issue is this case with respect to the availability of the equitable defenses is not whether Conans intended to use the CONAN THE BARBARIAN mark and image but whether Conans intended to derive benefit from and capitalize on CPI's goodwill in the CONAN character by using the mark in the manner in which it did.

ter prior to opening the San Antonio restaurant. Conans therefore opened that restaurant at its own peril, without the defenses of laches and acquiescence. *See, e.g.,* 2 J. McCarthy, *supra,* § 26:3; *James Burroughs Ltd. v. Sign of the Beefeater, Inc.,* 572 F.2d 574, 578 (7th Cir.1978); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,* 561 F.2d 1365, (10th Cir.1977) (even assuming defendant's first use of the infringing mark was in good faith, it could not execute a planned national advertising campaign using that mark after it had received the plaintiff's objection), *cert. dismissed,* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).

■ A finding of laches alone ordinarily will not bar the plaintiff's request for injunctive relief, although it typically will foreclose a demand for an accounting or damages. *Menendez v. Holt,* 128 U.S. 514, 524, 9 S.Ct. 143, 145, 32 L.Ed. 526 (1888); *McLean v. Fleming,* 96 U.S. 245, 258, 24 L.Ed. 828 (1877); *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 572 F.2d 574, 578 (7th Cir.1978); *Grotrian, Helfferich, Schulz, Th. Steinwag Nachf v. Steinway & Sons,* 523 F.2d 1331, 1344 (2d Cir.1975). This is because courts construe the plaintiff's unreasonable delay to imply consent to the defendant's conduct, which amounts to nothing more than a revocable license; the license is revoked once the plaintiff objects to the defendant's infringement. *Menendez,* 128 U.S. at 524, 9 S.Ct. at 145; *University of Pittsburgh v. Champion Products, Inc.,* 686 F.2d 1040, 1045 (3d Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982). In cases where the defendant actually relies upon the plaintiff's affirmative act, however, the fiction of implied consent is inapplicable and an injunction may not issue. *See, e.g., Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1041 (2d Cir.1980) (the plain-

tiff's unreasonable delay and the defendant's actual reliance upon that delay precluded the issuance of an injunction).

■ In this case CPI unreasonably delayed in protecting its rights in Austin, and its dilatoriness prejudiced Conans. Moreover, through the affirmative acts of L. Sprague deCamp, one of its agents, CPI implicitly if not explicitly authorized Conans to continue using the CONAN THE BARBARIAN name and image in connection with restaurant services in Austin. Responding to the special interrogatories, the jury found that Conans had proven all of the elements of the defenses of laches and acquiescence. The jury's affirmative finding of acquiescence establishes the reliance necessary to preclude the issuance of an injunction,[3] and the record supports the jury's implicit conclusion that Conans relied upon deCamp's conduct. We therefore hold that the district court properly denied CPI's post-trial request for injunctive relief related to the Austin area.

A more difficult question is whether CPI's laches and acquiescence in one locale eternally forecloses it from asserting its rights if Conans expands beyond that area. CPI instituted this suit after it learned that Conans had applied with the USPTO for a service mark for "Conans Pizza" and was contemplating a national franchising scheme. In rejecting CPI's post-trial request for injunctive relief, the district court implicitly determined that laches in one locale resulted in laches everywhere. We conclude that CPI's laches and acquiescence in Austin did not constitute an eternal abandonment nationwide. We reverse, therefore, the judgment of the district court insofar as the judgment denied an injunction for any geographical area other than Austin.

**3.** The district court's jury instruction for Conans' acquiescence defense stated in pertinent part:

> To establish this defense, Defendant must prove that
> (1) Plaintiff knew or should have known of Defendant's use of the name CONANS PIZZA;

> (2) that Plaintiff's conduct implied that Plaintiff had no objection to Defendant's use of the name; and (3) *that since that time, Defendant has built up its business under the assumption that it could use that name* so that it would be unjust to allow Plaintiff to force Defendant to stop using that name now. (emphasis added)

The respective definitions of laches and acquiescence offer the most compelling reason for concluding that CPI did not forfeit its rights nationally. Laches is commonly defined as an inexcusable delay that results in prejudice to the defendant. *Matter of Bohart,* 743 F.2d 313, 325 (5th Cir.1984); *Armco,* 693 F.2d at 1161; *Environmental Defense Fund, Inc. v. Alexander,* 614 F.2d 474, 478 (5th Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980). Similarly, acquiescence involves the plaintiff's implicit or explicit assurances to the defendant which induces reliance by the defendant. *Dwinell-Wright Co. v. White House Milk Co.,* 132 F.2d 822, 825 (2d Cir.1943); *Golden West Brewing Co. v. Milionas & Sons, Inc.,* 104 F.2d 880, 882 (9th Cir.1939); *Procter & Gamble Co. v. J.L. Prescott Co.,* 102 F.2d 773, 780 (3d Cir.), *cert. denied,* 308 U.S. 557, 60 S.Ct. 80, 84 L.Ed. 468 (1939). As affirmative defenses, the defendant must prove how it will be prejudiced by the plaintiff's unreasonable delay and implicit or explicit assurances. *Bohart,* 743 F.2d at 326 n. 13; *Environmental Defense Fund,* 614 F.2d at 479. An injunction against future infringement in a particular locale when laches and acquiescence have been found, as in this case, is properly denied if the plaintiff's delay or other conduct either induced reliance on the defendant's part or will result in substantial prejudice to the defendant if the plaintiff is permitted to enforce its rights in the trademark. Whether phrased as "reliance" or "prejudice", the effect is the same—the defendant has done something it otherwise would not have done absent the plaintiff's conduct.

The result is different, however, when the asserted future infringement would occur in a geographical area other than the one in which the plaintiff waived its right to protect its mark. In the new geographical area where the defendant has not yet expanded its business, the defendant is hard pressed to demonstrate how it could have relied to its detriment upon the plaintiff's inactivity or other conduct. Stated simply, the defendant at best can show only that the plaintiff acquiesced or unreasonably delayed in protecting its mark in the local area. Since a showing of mere delay will not support a finding of laches or acquiescence, *Bohart,* 743 F.2d at 326, the defenses are invalid. In this case we conclude that Conans has made sufficient showings of reliance and prejudice in the Austin area to justify denying an injunction, but has failed to offer any evidence, let alone carry its burden of demonstrating that it would be prejudiced if barred from infringing CPI's mark in any area other than Austin.

Three other practical considerations guide our determination that CPI's laches and acquiescence should not have barred its post-trial request for injunctive relief outside Austin. First, allowing Conans, which has been found to have infringed CPI's mark and violated Texas unfair competition laws, to expand its trademark violation and unfair competition would be inequitable and unworthy of judicial protection. Second, permitting Conans to expand its infringement *into* geographical areas it has never penetrated would grant Conans an unjustified windfall. Finally, creating a risk that CPI may be barred from asserting its rights nationwide because of its failure to challenge what it may have considered a *de minimis,* local infringement may spur litigation where litigation otherwise would not be necessary, since CPI would be forced to bring infringement suits in local *de minimis* situations.[4]

Having concluded that CPI is entitled to an injunction prohibiting Conans from infringing its mark in CONAN THE BAR-

---

**4.** Since incidental and isolated infringement may be difficult to detect and cost ineffective to halt, a plaintiff may make a conscious business decision to prosecute only those defendants who pose a threat to its mark. Of course, if a plaintiff declines protecting its mark against a number of "incidental" infringers, it must suffer without recourse the consequent weakening of its mark. Similarly, if a plaintiff fails to protect its mark because of a good faith but mistaken assumption that a particular defendant's use of its mark does not pose a threat to its mark, it risks waiving its right to protect its mark against that defendant in that geographical area.

BARIAN in areas outside Austin, Texas, we now turn to the scope of the injunction. As previously stated, the conduct in which Conans currently engages that CPI alleges constitutes an infringement of its mark includes (1) using the service mark "CONANS PIZZA" as its restaurants' name, (2) describing one of the featured pizzas as "The Savage", and (3) decorating the restaurants with Frank Frazetta's artwork which is commonly associated with *CONAN THE BARBARIAN* books and the CONAN THE BARBARIAN character. In 1981, Conans discontinued using all other indicia of CPI's trademark, including its use of the barbarian man on T-shirts, advertising material, and signs.

When fashioning an injunction in a suit such as this, the court must give careful consideration to the possibility that a defendant found to have either infringed the plaintiff's mark or unfairly competed with the plaintiff will modify his behavior ever so slightly and attempt to skirt the line of permissible conduct. Courts have responded to this problem by issuing broad injunctions that prohibit conduct that clearly infringes the plaintiff's mark as well as conduct that ordinarily would not justify any relief. For example, in *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695 (5th Cir.1980), *cert. denied*, 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982), we stated that:

> [A] competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves.

*Id.* at 705 (quotation omitted). Similarly, in *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368 (5th Cir.1977), a case in which the defendant had engaged in an elaborate and calculated scheme of unfair competition, we declined to modify the scope of a permanent injunction that prohibited the defendant from using certain marks that the plaintiff had alleged were likely to cause confusion with its trademarks. In upholding the broad injunction, we assumed without deciding that absent its other conduct the defendant would have been entitled to use the allegedly confusing marks but that its history of improper behavior justified a broad injunction. We reasoned that "[a]n injunction can be therapeutic as well as protective. In fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable." *Id.* at 390.

These standards justify the issuance of an injunction in this case prohibiting Conans from ever using any semblance of the CONAN THE BARBARIAN theme in its current and future restaurants outside Austin. This includes using the barbarian name or theme on menus, specialty items, signs, etc. Specifically, Conans must not be permitted to use "The Savage" or any similar phrase to describe its food items. Further, the printing of the name "Conans" must be in a form which does not resemble in any way the manner in which CPI prints the name CONAN. The writing of the name "Conans" in script form as Conans is now doing is a reasonable and proper presentation of the name. Finally, Conans must not display either the familiar Frazetta prints or any other artwork that even remotely suggests a connection between it and CONAN THE BARBARIAN. Because Conans opened the San Antonio restaurant after it had notice of CPI's objection to its use of CPI's mark, this injunction must apply with equal force to that restaurant.

■ We perceive no need to invoke the full breadth of the court's powers to prohibit Conans from using its name, "Conans Pizza", or the word "Conan" in the San Antonio restaurant or in any future restaurant outside Austin. This case is unlike the *Chevron Chemical* and *Kentucky Fried Chicken* cases, where the defendants' conduct was egregious, and this Court was concerned that any relief other than broad injunctions would permit the defendants to retain part of the goodwill

they had originally misappropriated from the plaintiffs. In view of CPI's laches and acquiescence, we view Conans' conduct as significantly different from the defendants' conduct in *Chevron Chemical* and *Kentucky Fried Chicken*. In addition, we see no likelihood that Conans will retain any goodwill which may have been misappropriated from CPI by merely using the names "Conans Pizza" or "Conans" without any indicia of CONAN THE BARBARIAN.

█ Another reason compels our conclusion that Conans should not be enjoined from using these names if it expands beyond Austin. CPI's argument reduced to its core is that it has exclusive rights in the name Conan in any form and in connection with any product or service. We reject this argument. Although we conclude that CPI has protectable rights in the CONAN THE BARBARIAN name and character, we hold that CPI lacks similar rights in merely the name Conan. "Conan" is a surname [5] and can be regarded as a descriptive term rather than an inherently distinctive mark. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir.) (the name "Domino" is a surname and warrants less protection than an arbitrary mark) *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). Descriptive terms may acquire trademark protection only with a showing that through usage the name has acquired distinctiveness (the so-called secondary meaning requirement) in the minds of ordinary consumers. *L.E. Waterman Co. v. Modern Pen Co.*, 235 U.S. 88, 94, 35 S.Ct. 91, 92, 59 L.Ed. 142 (1914); *Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.*, 208 U.S. 554, 559, 28 S.Ct. 350, 351, 52 L.Ed. 616 (1908); *Amstar*, 615 F.2d at 260; *John R. Thompson Co. v. Holloway*, 366 F.2d 108, 113 (5th Cir.1966); *Hanover Mfg.*

*Co. v. Ed Hanover Trailers, Inc.*, 434 S.W.2d 109, 111 (Tex.1968); *In re Glen Raven Knitting Mills, Inc.*, 153 U.S.P.Q. 134 (T.T.A.B.1967); *Dunfey Hotels Corp. v. Meridien Hotels Investments Group, Inc.*, 504 F.Supp. 371, 378, 380 (S.D.N.Y. 1980) (plaintiff established that the name "Parker House" is a well-known service mark for hotel services but failed to establish that merely the name "Parker" triggered the same public recognition). One noted commentator has stated that this test requires the plaintiff to show that "the public has come to recognize the personal name as a symbol which identifies and distinguishes the goods or services of only one seller." 1 J. McCarthy, *supra*, § 13:2 at 446 (footnote omitted).

At trial CPI failed to introduce any evidence, testimonial, statistical, or otherwise, demonstrating that its use of merely the name Conan established the requisite distinctiveness in the minds of ordinary consumers. CPI's failure to introduce any evidence establishing secondary meaning in the name Conan mandates denying the extraordinarily broad injunction it seeks. We conclude, therefore, that Conans' use of its trade name on existing and future restaurants outside Austin poses no legally significant threat to CPI's mark.[6]

### D. *Misappropriation of a Merchandising Property; Defective Jury Instructions*

█ CPI's remaining two claims need not long detain us. First, CPI argues that the district court improperly granted summary judgment dismissing its claim for misappropriation of its merchandising property. Although Texas courts have not yet determined whether such a cause of action exists independent of common law trade-

---

5. *E.g.*, Sir Arthur Conan Doyle, creator of the master sleuth Sherlock Holmes.

6. Since neither Conans nor CPI asked this court to determine the validity of Conans' federally registered service mark, "Conans Pizza", we decline to address this issue and express no view regarding the continuing viability of Conans' mark. *See* 15 U.S.C. § 1119 (1982) (federal courts are authorized to order the cancellation

of registrations). We cannot tell from the record whether CPI has instituted a cancellation proceeding in the USPTO which challenges the propriety of Conans' registration of the service mark in the first instance. *See* 15 U.S.C. §§ 1064 & 1092 (1982). Our decision today does not necessarily moot any existing proceeding or bar a future action in that forum.

mark infringement and unfair competition laws, we have recognized that Texas courts have consistently expanded the scope of protection afforded by the unfair competition laws. *Capital Films Corp. v. Charles Fries Productions, Inc.*, 628 F.2d 387, 394 (5th Cir.1980); *see also Universal City Studios, Inc. v. Kamar Industries, Inc.*, 217 U.S.P.Q. 1162, 1168 (S.D.Tex.1982) (finding that a cause of action for misappropriation of a merchandising property exists under Texas law). To prevail on a misappropriation of a merchandising property claim, the plaintiff must demonstrate that the defendant appropriated and used its property (e.g., trademark or other unique pecuniary interest) without its authority and in competition with its own licensing program. *Warner Brothers, Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir.1981); *Universal City Studios*, 217 U.S.P.Q. at 1168. In this case we conclude that summary judgment should not have been granted on this claim because CPI demonstrated that a factual question existed regarding whether Conans appropriated and used its property in competition with its licensing program. Nevertheless, the improper dismissal of this claim was harmless and does not warrant reversal, even assuming the jury would have found for CPI on this claim, since the jury's findings of laches and acquiescence would have barred any recovery by CPI on this unfair competition claim.

This conclusion also applies to CPI's remaining claim that the jury's failure to find a violation of 15 U.S.C. § 1125(a), although it had found a violation of 15 U.S.C. § 1114(1), demonstrated that the jury instructions were fatally defective. *See, e.g., Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1012 (5th Cir.1975) (rights afforded by § 1114(1) are merely a subset of the rights afforded by § 1125(a)). We need not determine whether the jury instructions were deficient, since the jury's laches and acquiescence findings would have precluded any recovery by CPI even if the jury had found that Conans' conduct

violated section 1125(a). Any asserted error was harmless. Fed.R.Civ.P. 61.

Accordingly, we affirm the judgment of the district court in part. We reverse and remand for the district court to formulate and order an injunction in accordance with this opinion.

AFFIRMED in part; REVERSED AND REMANDED in part.

CLARK, Chief Judge, dissents.

CLARK, Chief Judge, dissenting:

I concur in all of Judge Williams' opinion for the court except that part which permits defendant to continue its use of the name CONAN outside of the city of Austin. Since this court has chosen to frame a proper injunction, we are bound to balance the equities in ordering its terms.

It could be true in some abstract setting that use of the name CONAN becomes innocuous when it is disembodied from THE BARBARIAN and other associated trappings adopted by the plaintiff. I think it is unlikely here. CONAN does not refer to Arthur Conan Doyle or his family. Nor does it refer to Scott Leist or Gerald Strader. It is not descriptive of defendant's restaurant by style or product.

The majority says that once CONAN has been civilized by isolating it from its creation, it carries none of the good will defendants appropriated from plaintiff's intellectual property. That being so, the name alone can be of no business significance to defendant either. This leaves but two possible effects to its continued use: One, no one will know what CONAN means. Two, those who are familiar with plaintiff's property will continue to associate CONAN with THE BARBARIAN.

Defendant's use of CONAN originated in infringement, albeit innocent. As the majority observes, this gives defendant no right to expand that original use and the likelihood of confusion which this jury found it carried. Continued use of CONAN outside of Austin creates a distinct hazard that plaintiff will be injured. That use is of no established benefit to defend-

ants. Balancing the equities between the parties in framing the injunctive relief granted clearly indicates we should wipe the slate clean outside of Austin.