68 F.3d 480
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lottfie "Lou" ADRAY; Adray's CBS Premiums, Inc., Plaintiffs-Appellants,
v.
ADRY-MART, INC; Parvis Navi; E. Matinkhoo; Einola Mateen;
Musad Hakim, Defendants-Appellees.
 No. 93-55930.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 6, 1995.
Decided Oct. 19, 1995.
 
 Before: BROWNING, D.W. NELSON and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*,**
 
 I. Definition of Secondary Meaning
 A. Physical Source
 
 2
 We reject Lou Adray's argument that the district court's instruction on secondary meaning erroneously adopted the "physical source" theory of trademarks. See Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 155 (9th Cir. 1963); see generally 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition Sec. 3.03 (3d ed. 1994) (discussing the evolution of the source function of trademarks) [hereinafter McCarthy]. Although the instruction required that the "Adray's" mark have come to represent "a particular store" and "[Adray's] store," Lou Adray's own proposed instruction stated that "Lou Adray must prove that the name 'Adray's' has come to exclusively represent a single source of services associated with his store ...." (emphasis added). Both the district court's instruction and Lou Adray's proposal required that consumers link the mark with his store; the rejected instruction merely permits a less direct link. Any difference between the proposed instruction and the instruction given is subtle at best and "more probably than not" left the jury verdict untainted. Fuddrucker's, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 846 (9th Cir. 1987).
 
 B. Exclusivity
 
 3
 The instruction defining secondary meaning did not require the jury to find that Lou Adray was the exclusive user of the mark. Instead, the instruction, which states that the mark must "exclusively come[] to represent ... a particular store," is no more than a restatement of Lou Adray's own proposed single source instruction -- that to establish secondary meaning, customers must associate a mark with a single (i.e., exclusive) source.
 
 II. Presumption of Secondary Meaning
 
 4
 When Adry-Mart proposed the jury be instructed that Lou Adray was not entitled to a rebuttable presumption of secondary meaning if he knew of others using the "Adray's" mark, Lou Adray proposed a correction but did not argue that the limitation itself was improper. The district judge therefore had no reason to know Lou Adray objected to including the limitation, and Lou Adray waived his challenge to the adoption of the limitation. See Biundo v. Old Equity Life Ins. Co., 662 F.2d 1297, 1300 (9th Cir. 1981).
 
 
 5
 Although the instruction should have stated that Lou Adray was entitled to the presumption unless he knew of prior use of the mark in Orange County, Lou Adray was not harmed by the failure to include the geographic qualifier. Adry-Mart did not rely on Lou Adray's knowledge of his brother's use of the mark in Michigan; instead, it contended that Lou Adray knew of prior advertising using the mark in Orange County.
 
 
 6
 III. Deception as Substitute for Secondary Meaning
 
 
 7
 This circuit has consistently required a showing of secondary meaning in false designation of origin claims arising under Sec. 43(a) of the Lnham Trade-Mark Act, 15 U.S.C. Sec.1125(a). See Academy of Motion Picture Arts v. Creative House, 944 F.2d 1446, 1454 (9th Cir. 1991); Fuddruckers, 826 F.2d at 842; see also 2 McCarthy Sec. 15.03 ("[A]ctual deception can be evidence of secondary meaning and likelihood of confusion, but it is hard to see how [it is a] substitute[] for these essential elements."). Although Lou Adray cites New West Corp. v. Nym Co. of California, 595 F.2d 1194 (9th Cir. 1979) in support of his position, that case merely notes that actual confusion is "not necessary" to a finding of likelihood of confusion, id. at 1201, and does not undermine the requirement of secondary meaning described above.
 
 IV. Damages - Unjust Enrichment
 
 8
 The district court gave all of Lou Adray's proposed instruction on damages, including the specific measure of damages, except the phrase "based on the theory of preventing unjust enrichment." Deleting the name of the particular theory was not error. See Restatement (Third) of Unfair Competition Sec. 37, cmt. b (1995) (noting that courts award an accounting of profits based on several theories and that adopting a specific theory is often unnecessary because the consequences of the rationales "frequently overlap").
 
 V. Acquiescence
 
 9
 Charging the jury on the defense of acquiescence was clearly within the trial court's discretion. See, e.g., Conan Properties, Inc. v. Conans Pizza, Inc., 752 F.2d 145, 151-52 (5th Cir. 1985); State Farm Mutual Auto. Ins. Co. v. Williamson, 331 F.2d 517, 521 (9th Cir. 1964). Furthermore, in this circuit the requisite consent can be implied from the plaintiff's failure to act. See Golden West Brewing Co. v. Milonas & Sons, Inc., 104 F.2d 880, 882 (9th Cir. 1939).
 
 
 10
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 **
 Lou Adray's remaining challenges to the jury verdict and the district court's injunctive remedy are addressed in a separate published opinion