FPX, LLC, (d.b.a. Firepond), Individually and on Behalf of All Others Similarly Situated

v.

GOOGLE, INC., et al.

The Rodney A. Hamilton Living Trust and John Beck Amazing Profits, LLC, Individually and on Behalf of All Others Similarly Situated

v.

Google, Inc., et al.

Nos. 2:09–CV–142–TJW–CE, 2:09–CV–151–TJW–CE.

United States District Court,
E.D. Texas,
Marshall Division.

Sept. 29, 2011.

544

Scott Marshall Kline, Andrews & Kurth, Dallas, TX, Andrew W. Spangler, Spangler Law PC, Longview, TX, David Michael Pridham, David Pridham, Barrington, RI, Debera Wells Hepburn, Hepburn Law Firm PLLC, Carrollton, TX, Marc A. Fenster, Nathan Meyer, Raquel Vallejo, Russ August & Kabat, Los Angeles, CA, for Plaintiff.

Charles L. Babcock, Carl Christof Butzer, David T. Moran, Shannon Zmud Teicher, Jackson Walker, Dallas, TX, George L. McWilliams, Texarkana, TX, for Defendant.

## *ORDER*

T. JOHN WARD, District Judge.

The above-titled and numbered civil action was referred to United States Magistrate

Judge Chad Everingham pursuant to 28 U.S.C. § 636. The report of the Magistrate Judge (209–CV–142, Dkt. No. 117 & 209–CV–151, Dkt. No. 97) has been presented for consideration. The report recommends that the court deny Plaintiffs' motions for class certification because Plaintiffs' proposed classes do not meet Rule 23(a)(2)'s commonality requirement, are not cohesive, or, in the alternative, because Plaintiffs' requested relief is inappropriate under Rule 23(b)(2). The report further recommends that the court deny Defendants' motions to exclude Plaintiffs' expert's report and Defendants' motions to strike certain paragraphs of Mr. Marc A. Fenster's declaration.

The court is of the opinion that the conclusions of the Magistrate Judge are correct. Therefore, the court adopts the report of the United States Magistrate Judge, in its entirety, as the conclusions of this court. Accordingly, it is ORDERED that Plaintiffs' motions for class certification (Dkt. Nos. 77 & 59) are DENIED. It is FURTHER ORDERED that Defendants' motions to exclude Plaintiffs' expert's report (Dkt. Nos. 79 & 61) and motions to strike certain paragraphs of Mr. Marc A. Fenster's declaration (Dkt. Nos. 86 & 69) are DENIED.

### REPORT AND RECOMMENDATION

CHARLES EVERINGHAM IV, United States Magistrate Judge.

The above-referenced case was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. Pending before the court are: (1) plaintiffs FPX, LLC ("FPX"), Rodney A. Hamilton Living Trust ("Hamilton"), and John Beck Amazing Profits, LLC's ("Beck") (collectively "Plaintiffs") motions for class certification (Dkt. Nos. 77 & 59); (2) defendants Google Inc. ("Google"), YouTube, LLC, AOL Inc., Turner Broadcasting System, Inc. ("TBS"), MySpace, Inc. and IAC/INTERACTIVECORP's ("ASK.com") (collectively "Defendants") motions to exclude the expert report and opinion of Thomas J. Maronick (Dkt. Nos. 79 & 61); and (3) Defendants' motions to strike evidence submitted by Plaintiffs in support of their motions for class certification (Dkt. Nos. 86 & 69).[1] For the following reasons, the undersigned recommends that the court DENY Plaintiffs' motions for class certification and DENY Defendants' motions to exclude and strike.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs' class action complaints allege that Defendants are liable under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 & 1125, for trademark infringement and false designation of origin of Plaintiffs' trademarks. Pls.' Am. Compl. at ¶¶ 49–133, Dkt. No. 21.[2] Plaintiffs allege that throughout the period from May 14, 2005 to the present, Google[3] has maintained a practice of selling registered trademarks as a keyword and/or an Adword to persons or entities that are not the owners of such marks. As explained by the Second Circuit, the process about which Plaintiffs' complain operates as follows:

> Google operates a popular Internet search engine, which users access by visiting www.google.com. Using Google's website, a person searching for the website of a particular entity in trade (or simply for information about it) can enter that entity's name or trademark into Google's search engine and launch a search. Google's pro-

1. John Beck Amazing Profits, LLC and the Rodney Hamilton Trust have concurrently moved to certify a nearly identical class in the discovery-consolidated related case, *Rodney A. Hamilton Living Trust, et al. v. Google, Inc. et al.*, Case No 2:09–cv–151. Apart from the plaintiff name and the class identity, the class certification motions, and the parties' arguments with respect thereto, are substantially identical. Furthermore, Defendants filed the same motions to exclude and strike in the *Rodney A. Hamilton Living Trust* case. Accordingly, the court's rulings with regard to these motions also resolve the parties' disputes in the *Rodney A. Hamilton Living Trust* case.

2. The court cites to the amended complaint filed in *Rodney A. Hamilton Living Trust, et al. v. Google, Inc. et al.*, Case No. 2:09–cv–151, Dkt. No. 21. Almost identical allegation can be found in the complaint filed in *FPX, LLC v. Google, et al.*, 209–cv–142, Dkt. No. 1.

3. Plaintiffs allege that all other Defendants have analogous systems.

prietary system responds to such a search request in two ways. First, Google provides a list of links to websites [known as "organic links"], ordered in what Google deems to be of descending relevance to the user's search terms based on its proprietary algorithms. Google's search engine assists the public not only in obtaining information about a provider, but also in purchasing products and services. If a prospective purchaser, looking for goods or services of a particular provider, enters the provider's trademark as a search term on Google's website and clicks to activate a search, within seconds, the Google search engine will provide on the searcher's computer screen a link to the webpage maintained by that provider (as well as a host of other links to sites that Google's program determines to be relevant to the search term entered). By clicking on the link of the provider, the searcher will be directed to the provider's website, where the searcher can obtain information supplied by the provider about its products and services and can perhaps also make purchases from the provider by placing orders.

The second way Google responds to a search request is by showing context-based advertising. When a searcher uses Google's search engine by submitting a search term, Google may place advertisements on the user's screen. Google will do so if an advertiser, having determined that its ad is likely to be of interest to a searcher who enters the particular term, has purchased from Google the placement of its ad on the screen of the searcher who entered that search term. What Google places on the searcher's screen is more than simply an advertisement. It is also a link to the advertiser's website, so that in response to such an ad, if the searcher clicks on the link, he will open the advertiser's website, which offers not only additional information about the advertiser, but also perhaps the option to purchase the goods and services of the advertiser over the Internet. Google uses at least two programs to offer such context-based links: AdWords and Keyword Suggestion Tool.

AdWords is Google's program through which advertisers purchase terms (or keywords). When entered as a search term, the keyword triggers the appearance of the advertiser's ad and link. An advertiser's purchase of a particular term causes the advertiser's ad and link to be displayed on the user's screen whenever a searcher launches a Google search based on the purchased search term. Advertisers pay Google based on the number of times Internet users "click" on the advertisement, so as to link to the advertiser's website. For example, using Google's AdWords, Company Y, a company engaged in the business of furnace repair, can cause Google to display its advertisement and link whenever a user of Google launches a search based on the search term, "furnace repair." Company Y can also cause its ad and link to appear whenever a user searches for the term "Company X," a competitor of Company Y in the furnace repair business. Thus, whenever a searcher interested in purchasing furnace repair services from Company X launches a search of the term X (Company X's trademark), an ad and link would appear on the searcher's screen, inviting the searcher to the furnace repair services of X's competitor, Company Y. And if the searcher clicked on Company Y's link, Company Y's website would open on the searcher's screen, and the searcher might be able to order or purchase Company Y's furnace repair services.

In addition to AdWords, Google also employs Keyword Suggestion Tool, a program that recommends keywords to advertisers to be purchased. The program is designed to improve the effectiveness of advertising by helping advertisers identify keywords related to their area of commerce, resulting in the placement of their ads before users who are likely to be responsive to it. Thus, continuing the example given above, if Company Y employed Google's Keyword Suggestion Tool, the Tool might suggest to Company Y that it purchase not only the term "furnace repair" but also the term "X," its competitor's brand name and trademark, so that Y's ad would appear on the screen of a searcher who searched

Company X's trademark, seeking Company X's website.

Once an advertiser buys a particular keyword, Google links the keyword to that advertiser's advertisement. The advertisements consist of a combination of content and a link to the advertiser's webpage. Google displays these advertisements on the search result page either in the right margin or in a horizontal band immediately above the column of relevance-based search results.

*Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 125–26 (2d Cir.2009) (footnotes omitted); *see also* Pls.' Am. Compl. at ¶¶ 27–32, 39, Dkt. No. 21.

Plaintiffs allege that Google has improperly infringed upon Plaintiffs' trademarks by selling their trademarks to unauthorized and unlicensed third-parties as keywords so that when an Internet user searches for a Plaintiff's mark on Google's search engine, a competitor's advertisement hyperlink will appear at the very top of and/or to the right of Google's organic links. *See, e.g., id.* at ¶¶ 16–22.[4] This practice allegedly allows Plaintiffs' competitors to deceive and divert users searching for Plaintiffs' websites. *Id.* at ¶¶ 41–42 According to Plaintiffs' complaints, when a Google user launches a search for the Plaintiffs' trademark because the user wishes to purchase Plaintiffs' services, links to websites of its competitors will appear on the user's screen in a manner likely to cause the user to believe mistakenly that a competitor's advertisement (and website link) is sponsored by, endorsed by, approved by, or affiliated with Plaintiffs. *Id.* at ¶¶ 42–43. The theory of Plaintiffs' case is "initial interest confusion."

Based on these allegations, Plaintiffs' motions for class certification request certification of the following classes:

Any and all individuals and/or entities (excluding governmental entities, Defendants, and Defendants' parents, predecessors, subsidiaries, affiliates, and agents) domiciled within the state of Texas that own a mark that has been registered with the United States Patent and Trademark Office ("USPTO") that has been sold by defendant Google as a keyword and/or an Adword during the period May 11, 2005 through the present.[5]

Any and all individuals and/or entities (excluding governmental entities, Defendants, and Defendants' parents, predecessors, subsidiaries, affiliates, and agents) domiciled within the United States that own a mark that has been registered with the United States Patent and Trademark Office ("USPTO") that has been sold by defendant Google as a keyword and/or an Adword during the period May 14, 2005 through the present.[6]

## II. LEGAL STANDARD

To show that class certification is justified, the plaintiffs must satisfy the four requirements of Federal Rule of Civil Procedure 23(a). Rule 23(a) provides that a class may be certified if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED.R.CIV.P. 23(a). The court must also ascertain whether the plaintiffs meet one of the requirements of Rule 23(b). Here, Plaintiffs allege that certification is appropriate under Rule 23(b)(2), which states that "[a] class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ."

---

4. Plaintiffs further allege that defendants YouTube, AOL, TBS, MySpace, and ASK.com utilize the Google search engine and the Google AdWords advertising service within each such defendant's proprietary website. *See* Compl. at ¶ 18, Dkt. No. 1.

5. Plaintiff FPX seeks certification of this Texas class in case number 2:09–CV–142.

6. Plaintiffs Hamilton and Beck seek certification of this nationwide class in case number 2:09–CV–151.

The class certification determination rests within the sound discretion of the trial court, exercised within the constraints of Rule 23. *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 264 (5th Cir. 2007). "The party seeking certification bears the burden of establishing that all requirements of Rule 23 have been satisfied." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir.2005). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, ⸻ U.S. ⸻, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (emphasis in original). Before granting certification, a court must conduct a rigorous analysis to determine whether the plaintiffs have met the Rule 23 requirements. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996). "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and the "rigorous analysis" required of the court may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S.Ct. at 2551 (quotation and citations omitted). However, a district court cannot deny certification based on its belief that the plaintiff could not prevail on the merits. *Castano*, 84 F.3d at 744 (citing *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir.1971)). Because a district court maintains great discretion in certifying and managing a class action, a district court's decision to certify a class will be reversed only upon a showing that the court abused its discretion, or that it applied incorrect legal standards in reaching its decision. *James v. City of Dallas, Texas*, 254 F.3d 551, 562 (5th Cir.2001).

## III. TRADEMARK INFRINGEMENT[7] AND FALSE DESIGNATIONS OF ORIGIN

To understand the certification issues presented here, an understanding of trademark infringement and false designation of origin law is required. Plaintiffs allege that Defendants' policy of allowing the purchase of their various trademarks constitutes trademark infringement in violation of the Lanham Act § 32(1). 15 U.S.C. § 1114(1). To recover for infringement of a trademark under § 32(1), a plaintiff must establish, first, that its mark is valid, and second, that the defendant's use of the mark is likely to cause confusion. A defendant is then liable for infringement if he uses (1) any reproduction, counterfeit, copy or colorable imitation of the mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion or to cause mistake or to deceive. *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1009–10 (5th Cir.1975).

Plaintiffs' complaint also alleges that Defendants are liable under § 43(a) of the Lanham Act, which imposes liability on:

(1) [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

15 U.S.C. § 1125(a)(1)(A). "This statute covers a wide range of unfair business practices—each, however, possessing a common thread: '[T]he touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause confu-

---

7. Plaintiffs' motions for class certification do not address their claims for contributory or vicarious trademark infringement. To recover on these claims, however, Plaintiffs must prove direct trademark infringement. *Rolex Watch USA, Inc.*

*v. Meece*, 158 F.3d 816, 828–29 (5th Cir.1998). As such, the undersigned's analysis of the appropriateness of class treatment for Plaintiffs' direct infringement claims also applies to Plaintiffs' contributory and vicarious infringement claims.

sion.'" *McCoy v. Mitsuboshi Cutlery, Inc.,* 67 F.3d 917, 923 (Fed.Cir.1995) (quoting *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 592 (5th Cir.1993)); *see also Sovereign Order of Saint John of Jerusalem, Inc. v. Grady,* 119 F.3d 1236, 1243 (6th Cir.1997) (noting that "the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are likely to cause confusion") (citation and internal quotation marks omitted). Thus, liability for unfair competition, like liability for trademark infringement, depends on likelihood of confusion. *McCoy,* 67 F.3d at 923.

## IV. RULE 23(a) ANALYSIS

■ The Supreme Court recently clarified the standard for determining whether commonality exists under Rule 23(a)(2). *See Wal–Mart,* 131 S.Ct. at 2551–2557. The Court explained that:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean that they have all suffered a violation of the same provision of law.... Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* at 2551 (internal citations and quotations omitted). Accordingly, the commonality analysis "requires the court to determine (1) whether the class members' claims 'will in fact depend on the answers to common questions,' and (2) whether classwide proceedings have the capacity to 'generate common answers apt to drive the resolution of the litigation,'" *United States v. City of New York,* 276 F.R.D. 22, 28 (S.D.N.Y.2011) (quoting *Wal–Mart,* 131 S.Ct. at 2554 and 2551, respectively) (additional citations and quotations omitted).

■ Here, as discussed above, each Plaintiff has the burden to prove that Defendants' use of their mark is likely to cause confusion and/or that Defendants' actions are likely to cause confusion. "Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Elvis Presley Enter., Inc. v. Capece,* 141 F.3d 188, 194 (5th Cir. 1998). Whether consumer confusion is likely depends on the following factors: (1) the type of trademark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion. *See Conan Props., Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 149 (5th Cir.1985). No one factor is dispositive. *See Elvis Presley Enter.,* 141 F.3d at 194. In fact, a finding of a likelihood of confusion does not even require a positive finding on a majority of these "digits of confusion." *Conan Props., Inc.,* 752 F.2d at 150; *see also Elvis Presley Enter.,* 141 F.3d at 194. Furthermore, in addition to the listed factors, a court is free to consider other relevant factors in determining whether a likelihood of confusion exists. *See Elvis Presley Enter.,* 141 F.3d at 194; *see also Armco, Inc. v. Armco Burglar Alarm Co.,* 693 F.2d 1155, 1160–61 (5th Cir.1982).

■ Here, Plaintiffs' theory of liability is initial interest confusion. To determine whether Defendants are liable under this theory, the court must address each of the factors enumerated above for each instance of alleged trademark infringement. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137, 1145–54 (9th Cir.2011); *Gov't Emp. Ins. Co. v. Google, Inc.,* No. 1:04–CV–507, 2005 WL 1903128, at *7 (E.D.Va. Aug. 8, 2005). In *Gov't Emp. Ins. Co.,* the court ruled that the plaintiff had proven consumer confusion with regard to sponsored advertisements that featured the plaintiff's mark. *Gov't Emp. Ins. Co.,* 2005 WL 1903128, at *7. The court, however, emphasized that "its ruling applies only to the specific facts of this case, which include the unique business model employed by plaintiff and the specific design of defendant's advertising program and search results pages." *Id.* By contrast, in *Network Automation, Inc.,* 638 F.3d at 1145–54, the Ninth Circuit

rejected an initial interest confusion claim after engaging in a detailed analysis of the likelihood of confusion factors.

These cases demonstrate that even if the court were to conclude that Google's policy results in initial interest confusion with regard to, for example, FPX's or Rodney Hamilton's trademark, that does not necessarily mean that Google's policy results in initial interest confusion with regard to the other putative class members' trademarks. *Compare Network Automation, Inc.*, 638 F.3d at 1145–54 *with Gov't Emp. Ins. Co.*, 2005 WL 1903128, at *7. Thus, Plaintiffs' common contention (i.e., that Google's policy of selling trademarks as keywords leads to initial interest confusion) is not capable of classwide resolution and, as such, does not meet Rule 23(a)(2)'s commonality requirement. *See Wal-Mart*, 131 S.Ct. at 2551 ("Their claims must depend upon a common contention.... That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity *will resolve an issue that is central to the validity of each one of the claims in one stroke*.") (emphasis added). This fact defeats class certification.

## V. RULE 23(b)(2) ANALYSIS

### a. Cohesive Class

Under Fifth Circuit law, class treatment under Rule 23(b)(2) is not appropriate where resolution of the claims at issue would require "complex individualized determinations" and "numerous individualized hearings." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 317 (5th Cir.2007); *see also Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir.1998) (due to "the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members."). For example, in *Langbecker*, the Fifth Circuit quoted the following analysis with approval:

Relief will depend on individualized calculations for each account. As noted, individual claimants may present issues of causation and reliance, so that a classwide determination that defendants violated ERISA's requirements would not necessarily lead to an award in favor of a particular claimant. Also, defendants may be able to raise individual defenses regarding each class member. Thus, monetary relief here would not "flow directly from liability to the class as a whole." Certification under Rule 23(b)(2) is not available here.

*Langbecker*, 476 F.3d at 317 (quoting *Nelson v. IPALCO Enters. Inc.*, No. IP02–477CHK, 2003 WL 23101792, at *11 (S.D.Ind. Sept. 30, 2003)).

### 1. Validity/Distinctiveness

 With regard to mark validity,[8] proof of registration of a mark with the United States Patent and Trademark Office ("PTO") is prima facie evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration. 15 U.S.C. § 1115(a). This presumption of validity may be rebutted by establishing that the mark is not inherently distinctive—indeed, the presumption "evaporates as soon as evidence of invalidity is presented." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 239 (5th Cir. 2010); *see also Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir.1979) ("Although a statutory presumption of validity is accorded to marks registered under the Lanham Act, this presumption is rebuttable and may be overcome by establishing the generic or descriptive nature of the mark." (citations omitted)); *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 232 (5th Cir.2009) (noting that, registration notwithstanding, "if the mark is found to be either generic or descriptive and lacking secondary meaning, a court may cancel it.") If, however, a registrant has used its mark in connection with the services specified for five continuous

---

**8.** The undersigned notes that membership in Plaintiffs' proposed class requires that the potential class members own the mark at issue. As one court noted, "[e]ven if the court has to conduct hearings regarding ownership on even a tiny fraction of the potentially millions of registered [marks] ... of the putative class members, such an undertaking would render proceeding as a class unmanageable." *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 529 (N.D.Ill.2008).

years after the registration date and filed an appropriate affidavit, the mark is deemed "incontestable." 15 U.S.C. § 1065; *see also Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir.1980). Ownership of an incontestable mark constitutes conclusive evidence of the registrant's right to exclusive use of the mark in commerce for the services specified in the registration, subject only to the few defenses enumerated in 15 U.S.C. § 1115(b). *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 195–96, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); *Soweco*, 617 F.2d at 1184.

 In analyzing the validity and strength of a trade or service mark, the court analyzes the mark in accordance with the trademark taxonomy set out in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir.1976). Specifically, a trade or service mark may be (1) fanciful; (2) arbitrary; (3) suggestive; (4) descriptive; or (5) generic. *Id.* "A mark's placement on this spectrum determines whether and how it is entitled to legal protection." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241–42 (5th Cir.2010). Marks that are suggestive, arbitrary, or fanciful, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). In contrast, descriptive marks may be protected upon a showing of acquired or secondary meaning, while generic marks may never acquire secondary meaning and are categorically excluded from protection. *Id.* at 768–69, 112 S.Ct. 2753.

 This description of the complicated and highly fact-intensive analysis involved in determining the validity of a registered trademark aptly illustrates that this case is inappropriate for class treatment. "Though a registered mark is entitled to a presumption of validity, ... this presumption has never absolved the district court of its responsibility to conduct an independent validity of the mark analysis." *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 443 n. 2 (5th Cir.2000). As such, were the court to certify Plaintiffs' proposed classes, it would also have to undertake a "multi-faceted, fact-specific inquiry particular to each putative mark, which includes a detailed inquiry into whether a mark is generic, descriptive, suggestive, arbitrary, or fanciful." *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 529 (N.D.Ill.2008). Such an inquiry would require the court to make "complex individualized determinations" and would necessitate "numerous individualized hearings." *Langbecker*, 476 F.3d at 317. Accordingly, the highly individualized analyses required to determine merely the validity of the Plaintiffs' putative marks militates against class certification.

### 2. Likelihood of Confusion

The undersigned discussed above the highly complex and fact intensive inquiry that is required to determine whether a likelihood of confusion exists with regard to each of the Plaintiffs' marks. This further illustrates that Plaintiffs' proposed class is not cohesive and, therefore, not appropriate for certification.

### 3. Affirmative Defenses

 Moreover, Plaintiffs' request for class certification should fail because of the fact-specific inquiries the court would have to evaluate to address Defendants' affirmative defenses. *Castano*, 84 F.3d at 744 (explaining that "a court must understand the claims, *defenses*, relevant facts, and applicable substantive law in order to make a meaningful determination of certification issues") (emphasis added). These defenses include, among others, that: (1) the marks were obtained fraudulently; (2) the marks have been abandoned; (3) the marks are being used to misrepresent the source of goods or services; and (4) the defendant is making fair use of the marks. *See* 15 U.S.C. § 1115(b)(1)–(4); *see also Vulcan Golf*, 254 F.R.D. at 530–31. As the *Vulcan Golf* court noted: "[u]ltimately, the affirmative defenses related to the putative class members' marks simply add another layer to an already fact-specific inquiry that the court must delve into with respect the putative class members' marks...." *Vulcan Golf*, 254 F.R.D. at 531.

### b. Equipment Disgorgement

■ Rule 23(b)(2) permits class certification of claims seeking injunctive or declaratory relief. Here, Plaintiffs seek equitable disgorgement in addition to injunctive relief. In *Wal–Mart*, the Supreme Court held that claims for monetary relief may not be certified under Rule 23(b)(2), "at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief." 131 S.Ct. at 2557. The *Wal–Mart* Court compared Rule 23(b)(2) to (b)(3), concluding that the combination of individualized monetary relief and classwide injunctive or declaratory relief in a(b)(2) class is "inconsistent with the structure of Rule 23(b)." *Id.* at 2558. The Court reasoned that a class certified under (b)(2) has "the most traditional justification[ ] for class treatment" because "the relief sought must perforce affect the entire class at once." *Id.* In noting the distinctions between a(b)(2) class and a(b)(3) class, the Court pointed out that (b)(2) class members are not provided with an opportunity to opt-out of the class and may not even be provided notice of the action. *Id.* A class certified under (b)(3), by contrast, "allows class certification in a much wider set of circumstances [than a (b)(2) class] but with greater procedural protections," including notice and opt-out provisions for those potential class members who wish to have their claims heard on an individual basis. *Id.; see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable") (internal quotations and citation omitted). Thus, *Wal–Mart* held "that individualized monetary claims belong in Rule 23(b)(3)." *Wal–Mart*, 131 S.Ct. at 2558.

In reaching this decision, the Supreme Court overruled, at least in part, Fifth Circuit precedent that claims for monetary relief are permissible in a(b)(2) class so long as injunctive or declaratory relief is the predominant relief sought. In *Allison v. Citgo Petroleum Corp.*, the Fifth Circuit reiterated that "[it], like nearly every other circuit, [has] adopted the position taken by the advisory committee that monetary relief may be obtained in a(b)(2) class action so long as the predominant relief sought is injunctive or declaratory." 151 F.3d at 414. *Allison* also held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Id.* at 415. The Fifth Circuit defined "incidental" monetary damages as those "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id.* Such "incidental" damages should at least be capable of computation by means of objective standards and not dependent in any significant way on intangible, subjective differences of each class member's circumstances. *Id.* Finally, the Fifth Circuit reasoned that liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case. *Id.*

The *Wal–Mart* Court expressly rejected the general statement that monetary damages are recoverable in a(b)(2) class so long as they did not predominate over the injunctive or declaratory relief:

> The mere "predominance" of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections ... We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request—even a "predominant" request'—for an injunction.

131 S.Ct. at 2559. In reaching this ruling, however, the Supreme Court left open the more specific question of whether damages that are merely "incidental" to the injunctive or declaratory relief can be awarded to a 23(b)(2) class as outlined in the Fifth Circuit's decision in *Allison*. *Id.* at 2560 ("we need not decide in this case whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause").

The court, however, need not resolve this open question to reach its decision with respect to Plaintiffs' claims for equitable dis-

gorgement because these claims cannot satisfy the *Allison* standard. In *Casa Orlando Apartments, Ltd. v. Federal Nat. Mortg. Ass'n,* the Fifth Circuit concluded that:

> monetary relief does not directly flow to the class members *as a whole* .... Fannie Mae's earning of profits does not automatically entitle Plaintiffs to receive those profits in the form of disgorgement. Plaintiffs must first prove liability by demonstrating a breach of fiduciary duty. However, as we have discussed, each state has varying applicable law surrounding the creation of fiduciary duty. Thus, liability could not be proven for this nationwide class as a whole. Without the ability to prove class-wide liability, class-wide disgorgement is also not feasible. The equitable relief is dependent on "subjective differences of each class member's circumstances," namely which state law applies to his or her claim.

624 F.3d 185, 199 (5th Cir.2010) (quoting *Allison,* 151 F.3d at 415) (emphasis in original); *see also In re Wilborn,* 609 F.3d 748 (5th Cir.2010) (concluding that the bankruptcy court's certification of a 23(b)(2) was inappropriate because disgorgement would "depend on the specific circumstances of each class member...."). Likewise, in this case, liability cannot be proven for Plaintiffs' proposed classes as a whole. Rather, Plaintiffs' requested equitable relief is dependent on numerous individualized issues, including the validity and ownership of Plaintiffs' marks, the balancing of the likelihood of confusion factors, and the applicability of affirmative defenses. Accordingly, certification of Plaintiffs' proposed 23(b)(2) classes is inappropriate because Plaintiffs seek equitable disgorgement as a form of relief.

## VI. CONCLUSION

As set forth above, Plaintiffs' common contention is not capable of classwide resolution and, as such, does not meet Rule 23(a)(2)'s commonality requirement. Furthermore, the individualized nature of each class member's trademark infringement claim precludes certification under Rule 23(b)(2). And, finally, Plaintiffs' claims for equitable disgorgement are inappropriate for class certification. The undersigned, therefore, recommends that the court DENY Plaintiffs' mo-

tions for class certification because Plaintiffs' proposed classes do not meet Rule 23(a)(2)'s commonality requirement, are not cohesive, or, in the alternative, because Plaintiffs' requested relief is inappropriate under Rule 23(b)(2) (Dkt. Nos. 77 & 59). With regard to Defendants' motions to exclude Plaintiffs' expert's report (Dkt. Nos. 79 & 61) and motions to strike certain paragraphs of Mr. Marc A. Fenster's declaration (Dkt. Nos. 86 & 69), the undersigned considered, but rejected the class certification motions despite that evidence. Accordingly, the undersigned recommends that the court DENY these motions.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. FED.R.CIV.P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).

SIGNED this 8th day of September 2011.